SALVADOR v CONNOR

Docket No. 77-3648. Submitted June 15, 1978, at Lansing.—Decided December 28, 1978. Leave to appeal applied for.

Robert G. Salvador commenced an action in Oakland Circuit Court against Clyde C. Connor, Eileen Connor and Connor-Penn Corporation alleging various misdeeds on the part of the defendants with respect to the operation of a Lansing area restaurant, owned and operated by the parties herein, and seeking the appointment of a receiver and an accounting of profits, to enjoin the defendants from removing him either from the corporate board or from his managerial position with the restaurant, to prevent the defendants from modifying the corporation's Federal tax subchapter S status and any other equitable and proper relief which the court might deem justified. A default judgment was granted to the plaintiff when the defendants failed to answer. Subsequently, pursuant to a stipulation entered into by the parties, the defendants were allowed to answer the complaint. The defendants filed a demand for a jury trial when they filed their answer. The plaintiff amended his complaint on two separate occasions, each time seeking the enforcement of an alleged oral agreement between the plaintiff and the defendants.

The plaintiff contested the defendants' jury demand, asserting that the defendants were not entitled to a jury trial in an action seeking only equitable remedies. The trial court characterized the plaintiff's case as entirely equitable and held that the defendants were not entitled to a jury trial on any issue.

The trial court issued an interlocutory order temporarily

REFERENCES FOR POINTS IN HEADNOTES

[1] 19 Am Jur 2d, Corporations §§ 535, 589.

Attorney's fees and other expenses incident to controversy respecting internal affairs of corporation as charge against the corporation. 39 ALR2d 580.

[2] 5 Am Jur 2d, Appeal and Error § 714.

27 Am Jur 2d, Equity §§ 238-244.

47 Am Jur 2d, Jury § 34.

[3] 18 Am Jur 2d, Corporations § 497.

[4] 4 Am Jur 2d, Appeal and Error § 541.

5 Am Jur 2d, Appeal and Error § 570.

enjoining the individual defendants from removing the plaintiff from his position on the board of the defendant corporation or from his position as manager of the restaurant. The court further ordered the defendants to pay the plaintiff's unpaid salary and a portion of profits which had accrued during the pendency of the litigation while plaintiff continued to perform his employment duties. The defendants' applications for leave to appeal these interlocutory orders were denied.

The defendants sought to disqualify the circuit judge to whom the case had been assigned, alleging prejudice resulting from and evidenced by that judge's verdict entered in an earlier, similar case involving the individual defendants. This motion to disqualify the assigned trial judge was denied after a hearing before another Oakland Circuit judge because the defendants' delay of 26 months in seeking reassignment rendered their request untimely.

The trial court, James S. Thorburn, J., ultimately ruled in plaintiff's favor regarding the allegations of fraudulent conduct on the part of the individual defendants, ordered a dissolution of the corporate defendant and awarded the plaintiff damages. The individual defendants appeal, alleging 1) that it was error to refuse to reassign this case to a different circuit judge after hearing the defendants' allegations of prejudice, 2) that an award of $2,500 in attorneys fees to the plaintiff was improper and unauthorized, 3) that the refusal to grant the defendants' demand for a jury trial, at least as to the issue of the existence and enforcement of the oral agreements, was error, and 4) that there was an insufficient evidentiary basis for the court to find a breach of fiduciary duty or to support the court's award of the damages. *Held:*

1. The decision that the defendants' delay of 26 months in seeking reassignment was grounds for denial of the motion for reassignment of the case to another circuit judge was clearly not an abuse of discretion.

2. The trial court's final order on dissolution of the corporation and distribution of corporate assets was not error. The trial court did not err in providing that the judgment could be enforced either by execution or by garnishment.

3. The award of $2,500 of attorneys fees to plaintiff's attorney was unjustified.

4. The trial court's failure to impanel a jury to hear those claims arising out of the alleged oral agreements had no prejudicial effect upon the defendants whatsoever and was not

reversible error since the court did not utilize these agreements as a foundation to award relief to the plaintiff.

5. There is ample evidence to support the lower court's determination of the amount of damages suffered by the plaintiff.

Affirmed, with the concurrence of P. J. Mᴀʀᴜᴛɪᴀᴋ, J., in the opinion of D. E. Hᴏʟʙʀᴏᴏᴋ, P.J., on all issues except the award of $2,500 attorneys fees.

M. J. Kᴇʟʟʏ, J., dissented. He would hold:

1. That the defendants were entitled to have a jury trial.

2. That the trial court's conclusion that the plaintiff, a neophyte in the restaurant business, was to have exclusive control of the restaurant, which was only one of several owned by the defendants, was clearly erroneous.

He would reverse and remand for trial.

### Oᴘɪɴɪᴏɴ ᴏғ ᴛʜᴇ Cᴏᴜʀᴛ

1. Cᴏsᴛs—Tʀɪᴀʟ—Cᴏʀᴘᴏʀᴀᴛɪᴏɴs—Aᴛᴛᴏʀɴᴇʏ Fᴇᴇs—Cᴏᴜʀᴛ Rᴜʟᴇs.

*A trial court's award of attorney fees in an action for equitable relief against a corporation and its majority stockholders "because of the extraordinary burden placed on the plaintiff despite the fact that the individual defendants admitted ultimately that the corporate profits due to the plaintiff were undistributed and had not been paid" was in compliance with the court rule and not unreasonable (GCR 1963, 111.6).*

2. Tʀɪᴀʟ—Jᴜʀʏ Tʀɪᴀʟ—Lᴇɢᴀʟ ᴀɴᴅ Eǫᴜɪᴛᴀʙʟᴇ Issᴜᴇs—Aᴘᴘᴇᴀʟ ᴀɴᴅ Eʀʀᴏʀ—Rᴇᴠᴇʀsɪʙʟᴇ Eʀʀᴏʀ.

A trial court's failure to allow a jury trial of the legal issues involved in an action alleging both legal and equitable claims had no prejudicial effect and did not constitute reversible error where the court decided the controversy based entirely upon the equitable claims.

3. Cᴏʀᴘᴏʀᴀᴛɪᴏɴs—Mᴀᴊᴏʀɪᴛʏ Sʜᴀʀᴇʜᴏʟᴅᴇʀs—Gᴏᴏᴅ Fᴀɪᴛʜ—Jᴜʀʏ ᴏғ Gᴏᴏᴅ Fᴀɪᴛʜ.

The law requires of the majority in control of a corporation the utmost good faith in its control and management as to the minority and it is the essence of this trust that it be so managed as to produce to each shareholder the best possible return on his investment.

### Dɪssᴇɴᴛ ʙʏ M. J. Kᴇʟʟʏ, J.

4. Cᴏsᴛs—Tʀɪᴀʟ—Aᴛᴛᴏʀɴᴇʏ Fᴇᴇs—Aᴘᴘᴇᴀʟ ᴀɴᴅ Eʀʀᴏʀ.

An award by a trial court of attorney fees to plaintiff's attorney

because of "defendants' attorneys' vexatious conduct" was erro-
neous in the absence of support in the record for the conclusion
that defendants' attorneys' conduct warranted an award of
attorney fees.

*Paul W. Harty,* for plaintiff.

*Thomas R. Sullivan* and *John A. Hamilton,* for
defendants.

Before: D. E. HOLBROOK, P.J., and M. J. KELLY
and P. J. MARUTIAK,* JJ.

D. E. HOLBROOK, P.J. Plaintiff-appellee filed a
complaint August 7, 1974, in Oakland County
Circuit Court, alleging various misdeeds on the
part of defendants-appellants with respect to the
operation of a Lansing area restaurant owned and
operated by the parties herein. A default judgment
was granted against defendants when they failed
to answer. Pursuant to a stipulation entered by
the parties on October 2, however, the defendants
were allowed to answer the complaint. Simultane-
ously with their answer the defendants filed a
demand for a jury trial.

Plaintiff amended his complaint on two separate
occasions, with each complaint alleging misuse of
corporate funds by the defendant majority share-
holders, breach of the plaintiff's employment con-
tract which conferred upon him the right to man-
age the restaurant which was the subject matter
of the corporation, violation of the majority share-
holders' fiduciary duties with respect to the said
corporation, and breach of the parties' oral agree-
ments. Defendants' answer denied the existence of
any oral agreements, denied any breach of fiduci-

* Circuit judge, sitting on the Court of Appeals by assignment.

ary duty, and also controverted plaintiff's contentions of sole managerial authority.

Plaintiff sought various equitable remedies, including the appointment of a receiver and an accounting of profits. He sought to enjoin the defendants from removing him either from the corporate board or from his managerial position with the restaurant and also sought to prevent the defendants from modifying the corporation's Federal tax subchapter S status. Plaintiff also sought any other equitable and proper relief which the court might deem justified. Plaintiff's subsequent amended complaints also sought enforcement of the alleged oral agreement in which the plaintiff claimed that the individual defendants had promised:

"[T]hey would not take advantage of him and that they would not take any funds out of the Corporation except their share of the profits; and CLYDE CONNOR further promised him that the Corporation would remain a "Sub-Chapter S" Corporation so that the Plaintiff would be assured of his one-third (1/3) of the profits, and that Plaintiff would have sole control in managing and running the Number Four Restaurant."

Defendants based their demand for a jury trial upon the plaintiff's request for enforcement of the alleged oral agreements. Plaintiff contested defendants' jury demands, asserting that the defendants were not entitled to trial by jury in an action seeking only equitable *remedies.* Characterizing the plaintiff's case as entirely equitable, the trial court held that the defendants were not entitled to jury trial on any issue.

By interlocutory order the trial court temporarily enjoined the individual defendants from removing plaintiff from his position on the defendant

corporation's board or from his position as manager of the parties' restaurant. The court further ordered the defendants to pay the plaintiff's unpaid salary and profits in the amount of $15,708.76, which amount had accrued during the pendency of the litigation while plaintiff continued to perform his employment duties. Defendants' attempts to appeal these interlocutory orders were denied.

Defendants also sought to disqualify the circuit judge to whom this case had been assigned, alleging prejudice resulting from and evidenced by that judge's verdict entered in an earlier, similar case involving the individual defendants. This motion was heard by another Oakland County circuit judge, who found that the instant case, which had been assigned under local court rules, because of its similarity in subject matter to the earlier case, was not based upon such similar facts as to require assignment to a single circuit court judge. Nevertheless, it was held that defendants' delay of 26 months in seeking reassignment rendered their request untimely. Reassignment was therefore denied. The assigned judge began taking proofs in the case during February of 1975. Testimony was interrupted by a default judgment entered against the defendants in April of 1976; this judgment was later set aside and testimony was heard once again beginning in January of 1977.

Testimony was taken first with respect to the value of the defendant corporation. One appraiser testified to an approximate worth of $385,900, while the second testified that the value of the restaurant business was only approximately $200,-000.[1]

---

[1] These values do not include real property, which was leased by the defendant corporation from a second corporation of which the individual defendants were majority shareholders.

Testimony was then taken with respect to plaintiff's claims of misconduct by individual defendants. Plaintiff alleged that his employment agreement was violated when the individual defendants independently hired their son and a nephew to managerial positions. Plaintiff contended that these relatives performed few, if any, services of value for the corporation. Further, plaintiff offered evidence that the individual defendants, again without calling a board meeting, opened an office in Lansing and improperly charged its expenses in part to the parties' restaurant operation, with little or no benefit being received by the defendant corporation from this office.

Plaintiff contended that all proceeds from candy and gum sales at the parties' restaurant were improperly diverted to a fund created for the individual defendants' children's education, that the individual defendants improperly charged the corporation for the cost of maintaining a phone in their home, that the son and nephew were each provided with a car improperly charged to the defendant corporation, that the individual defendants utilized the profits of the corporation to pay another relative's air fare from Arizona, that the defendants improperly deducted their legal fees in defending the instant action from the corporation's profits, and finally, that a secretary performing bookkeeping services for the individual defendants in their home was improperly placed on the restaurant payroll. Plaintiff's testimony was supported in part by the testimony of one of the restaurant's employees but contradicted by testimony offered by the individual defendants. Ultimately the trial court ruled in favor of plaintiff's allegations of fraudulent conduct on the part of the individual defendants, decreed a dissolution of

the corporate defendant, and awarded the plaintiff damages in the amount of $167,896.87. This amount included accrued wages, attorney's fees of $2,500, the plaintiff's one-third share of the defendant corporation, whose assets were increased by the court's judgment finding the individual defendants liable to the corporation for some $64,000 in improperly diverted profits, and $50,000 in exemplary damages.

The individual defendants appeal from the trial court's ruling, alleging several errors. The defendants claim that it was error to refuse to reassign this case to a different judge after hearing the defendants' allegations of prejudice. The decision that the defendants' delay of 26 months in seeking reassignment was grounds for denial of this motion is clearly not an abuse of discretion and this issue may be dismissed summarily. Similarly, the trial court's final order allowing dissolution of the corporation and distribution of corporate assets if the plaintiff was not timely satisfied by the individual defendants was not error, given the broad authority granted to the circuit court under MCL 450.1825; MSA 21.200(825), which provides that:

"(1) The circuit court of the county in which the registered office of the corporation is located may adjudge the dissolution of, and liquidate the assets and business of, a corporation, in an action filed by a shareholder when it is established that the acts of the directors or those in control of the corporation are illegal, fraudulent or wilfully unfair and oppressive to the corporation or to such shareholder.

"(2) In an action filed by a shareholder to dissolve the corporation on a ground enumerated in subsection (1), the circuit court upon establishment of such ground may make such order or grant such relief, other than dissolution, as it deems appropriate, including, without limitation, an order providing for any of the following:

"(a) Cancellation or alteration of a provision contained in the articles of incorporation, or an amendment thereof, or in the bylaws of the corporation.

"(b) Cancellation, alteration or injunction against a resolution or other act of the corporation.

"(c) Direction or prohibition of an act of the corporation or of shareholders, directors, officers or other persons party to the action.

"(d) Purchase at their fair value of shares of a shareholder, either by the corporation or by the officers, directors or other shareholders responsible for the wrongful acts."

The trial court also did not err in providing that the judgment could be enforced either by execution or by garnishment.

The defendants next argue that the award of $2,500 in attorney's fees to the plaintiff was improper and unauthorized. Defendants-appellants do not challenge the court's general award of costs and attorney's fees as provided by GCR 1963, 111.6, but only the $2,500 amount. Under MCL 600.2405; MSA 27A.2405, attorney's fees are to be taxed and awarded as costs only as authorized by statute or court rule. Such awards are not allowed absent an applicable statute, court rule or recognized exception. *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973), *City of Center Line v 37th District Court Judges,* 74 Mich App 97; 253 NW2d 669 (1977), *lv gtd,* 401 Mich 810 (1977).

In *Kittermaster v Brossard,* 105 Mich 219, 221; 63 NW 75 (1895), the Michigan Supreme Court rejected the argument that "a court of equity may impose a reasonable solicitor's fee". Nevertheless, rule 111.6 specifically provides that reasonable attorney's fees may be awarded to compensate a party who is required to put to proofs any matter which is improperly and unreasonably alleged or

denied. The trial court stated in its opinion that the:

"[E]xtraordinary attorney fee of $2500 was ordered because of the extraordinary burden placed on the plaintiff despite the fact that the individual defendants admitted ultimately that the corporate profits due to the plaintiff were undistributed and had not been paid."

Thus the court's award of fees is in compliance with rule 111.6; it is not unreasonable.

The defendants also raise two additional errors which are not so easily disposed of. First, the defendants claim that the trial court's refusal to grant the defendants' demand for a jury trial, at least as to the issue of the existence and enforcement of the oral agreements, was error. As noted above, at the circuit court level the plaintiff opposed this demand alleging that the instant matter was entirely equitable; and the trial court held for the plaintiff on that ground. On appeal the plaintiff also questions the timeliness of the defendants' demand. The plaintiff stipulated that the defendants might file a late answer in this matter, however, and the defendants promptly requested a jury trial following this late answer. Upon the authority of *Nelson v Runnels,* 31 Mich App 163; 187 NW2d 530 (1971), the defendants' request for a trial by jury was therefore timely. We also find, however, that the defendants suffered no prejudice as a result of the trial court's denial of trial by jury on the issue of the existence of the alleged oral contract; after close inspection of the trial court's opinion and judgment in this matter, we find that the court under the authority of MCL 450.1825, *supra,* held against the defendants solely on the basis of the plaintiff's equitable claims. The defendants alleged no rights arising out of the

claimed oral agreements and in fact denied the existence of any such agreements. Therefore, since the court did not utilize these agreements as a foundation to award relief to the plaintiff, we are constrained to hold that the trial court's failure to impanel a jury to hear those claims had no prejudicial effect upon the defendants whatsoever and was not reversible error.

In order that we might not be misunderstood we hasten to add that we fully recognize the defendants' right to a jury trial on all legal issues joined in the instant case. See 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 412–423. Further, we are aware that a separate panel of the Court of Appeals in *Hackett v Connor,* 58 Mich App 202; 227 NW2d 292 (1975), under somewhat similar circumstances, remanded the entire matter to circuit court in order to protect the defendants' right to jury trial on legal issues. In *Hackett* the Court found that remand was necessitated by the trial court's denial of defendants' counsel's motion for a continuance pending further discovery, which concern is not at issue here. That error alone required that the case be remanded to the circuit court. Further, the Court in *Hackett* found that the trial court's judgment for the plaintiffs rested primarily upon "fraudulent breaches" of alleged oral agreements. The judgment reached by the trial court in the instant matter does not rest upon breach of any oral agreements. Rather, as will be seen below, the instant decision was grounded upon the fraudulent conduct of the individual defendants in breach of their fiduciary duties, and upon the trial court's interpretation of the parties' written agreements.[2] *Hackett* does not

---

[2] In support of the lower court's interpretation of the parties' written agreements, we cite with approval 5 Callaghan's Michigan Civil Jurisprudence (2d ed), § 171, p 743:

"In construing a written instrument, equity always attempts to get

control, therefore, and finding no prejudice to have resulted to defendants from the trial court's denial of trial by jury on the legal issue alleged in the plaintiff's complaint, we refuse to remand this matter to the trial court for trial by jury.

Finally, the defendants argue that there was insufficient evidentiary basis for the court to find a breach of fiduciary duty or to support the court's award of damages in the amount of $167,896.87. It is beyond dispute that in Michigan, directors and officers of corporations are fiduciaries who owe a strict duty of good faith to the corporation which they serve. See 6 Callaghan's Michigan Civil Jurisprudence (2d ed), § 79, p 208, § 117, p 291. The same is true of majority shareholders, since:

"[T]he law requires the majority in control of the corporation the utmost good faith in its control and management as to the minority and it is the essence of this trust that it must be so managed so as to produce to each shareholder, the best possible return upon his investment." 6 Callaghan, *supra* at § 166, p 365.

See also 19 CJS, Corporations, § 764, p 112, § 768, p 123, § 781, p 150, § 786, p 161, § 821, p 223, *Thomas v Satfield Co,* 363 Mich 111; 108 NW2d 907 (1961), *L A Young Spring & Wire Corp v Falls,* 307 Mich 69; 11 NW2d 329 (1943), and *Thompson v Walker,* 253 Mich 126, 134–135; 234 NW 144 (1931).

This Court must review the findings with respect to the plaintiff's equitable claims *de novo,* with due

at its substance and to ascertain, uphold and enforce the rights and duties that spring from the real intention of the parties, and, in doing so, a court of equity will look into all circumstances under which the instrument was made in order to determine the proper meaning of the transaction, although words of the instrument will not be changed." (Footnote omitted.)

deference being given to the findings of the trial court under *Barnett v International Tennis Corp,* 80 Mich App 396, 404; 263 NW2d 908 (1978). In other words, this Court must sustain the findings of the court below unless it becomes convinced, upon review of the evidence, that had it heard the evidence in the first instance it would have been compelled to rule contrary to the ruling actually made by the trial court. The trial court in its holdings points to evidence supporting each of the following items of improper diversion of corporate funds: payment of corporate funds to defendants' son and to their nephew with no service of value being rendered to the corporation in return, and without the consent of the plaintiff, a member of the corporation's board of directors;[3] the payment of expenses, including rent, for an office in Lansing which was of little or no benefit to the corporation, also without plaintiff's consent; improper use of restaurant facilities to generate "gum and mint money", which money did not accrue to the benefit of the corporation; and finally, payment of corporate funds for unauthorized legal fees and accounting services generally incurred entirely for the benefit of the individual defendants. Further, there is ample evidence to support the court's determination of the amount of damages suffered by the plaintiff as a result of this misconduct. After reviewing the evidence in support of these findings, we are *not* left with a firm conviction that the trial court erred in its decision in favor of plaintiff. As the Court stated in *Holden v Lashley-Cox Land Co,* 316 Mich 478, 484; 25 NW2d 590 (1947):

"It is apparent that a corporation so conducted could

---

[3] The court further found these hirings by the defendants to be contrary to the written contract of employment between the plaintiff and defendants.

not accomplish the purposes for which it was organized, and it was therefore the duty of its directors to wind up its affairs. * * * Their failure to do so, coupled with improper payments to themselves, was a breach of trust imposed in them by the stockholders, and, hence, a constructive fraud. Plaintiff stockholders are entitled to equitable relief to the extent of the appointment of a liquidating receiver, a dissolution of the corporation, and distribution of the assets to its stockholders." (Citations omitted.)

See also *Veeser v Robinson Hotel Co,* 275 Mich 133, 137-138; 266 NW 54 (1936).

The individual defendants' behavior in managing the corporation's business affairs evidences a significant degree of nepotism, and an incredibly callous disregard for the financial well-being of the defendant corporation and its minority shareholders. The trial court is upheld.

Affirmed.

P. J. MARUTIAK, J., concurs in this opinion, except as to the matter of $2,500 attorney's fees.

M. J. KELLY, J. *(dissenting).* I am unable to distinguish the jury trial issue in this case from that in *Hackett v Connor,* 58 Mich App 202; 227 NW2d 292 (1975). I would reverse and remand for a jury trial for the reasons stated therein. Even if this result were not mandated by *Hackett, supra,* I am convinced that on this record I would have reached a different result had I been trier of fact. I believe the trial court's finding that the "Contract of Employment specifically placed the power of management exclusively in the plaintiff and the individual defendants had no power to employ anyone" is clearly erroneous. The defendants contributed their name, money and expertise to this operation which was only one of several and to

conclude that this neophyte plaintiff-manager would have exclusive control of the restaurant through his one-third interest is in my view clearly erroneous.

I also arrive at the opposite conclusion as to the specific findings in c, d, e, f, h, i, and j of the findings of fact contained in the trial court's opinion, but I see no productive reason to elaborate since the majority remains unconvinced.

I will comment on the $2,500 award of attorneys' fees to Paul W. Harty, plaintiff's attorney, in the hope of changing at least one of my brothers' votes on that score. Under any standard, the award of attorneys' fees in this case was unjustified and unjustifiable.

On August 20, 1975, defendants were ordered to pay $2,500 to Mr. Paul W. Harty as attorney fees and costs. The record does not indicate the trial court's reasoning for so ordering. The final order of July 27, 1977, approximately two years later, merely includes that attorney fee award because defendants had refused to pay it during the litigation and while both successful and unsuccessful attempts to appeal had been undertaken. In this appeal, appellee's brief says that the award was made under the trial court's inherent authority because of "defendants' attorneys' vexatious conduct" citing GCR 1963, 111.6. The majority likewise relies on rule 111.6, but I submit that there is no record support for that reliance.

No explanation is made for the trial court's failure to rule on defendant's motion to set aside the default on six successive Wednesdays nor do we have the record of those proceedings; the default was ultimately set aside by stipulation. No explanation is made for the taking of a default on a second amended complaint. No explanation is

made for the rule violation in awarding the attorneys' fees to Mr. Harty directly, rather than to the plaintiff. GCR 1963, 111.6. Finally, there are no proofs, nor explanation for the lack of proofs, as to the reasonable expenses incurred. More mystifying still is the fact that at least some of the activity of which the appellee complains was taking place in the lower court while a stay of execution was pending in this Court, conditioned upon the furnishing of a $20,000 bond. In the absence of any support in the record for the conclusion that defendants' attorneys' conduct warranted the award of attorneys' fees, the award was patently erroneous.

In any event, the power to tax costs is covered fully by statute and court rule. MCL 600.2401; MSA 27A.2401. Attorney fees are to be taxed and awarded as costs only if authorized. *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973), *City of Center Line v 37th District Court Judges,* 74 Mich App 97; 253 NW2d 669 (1977), *City Bank & Trust Co v Kwaske Bros Construction Co,* 78 Mich App 158; 259 NW2d 407, *rev'd* 402 Mich 844 (1977), *Dassance v Nienhuis,* 57 Mich App 422; 225 NW2d 789 (1975), *Dozier v Automobile Club of Michigan,* 69 Mich App 114; 244 NW2d 376 (1976), *Shepard Marine Construction Co v Maryland Casualty Co,* 73 Mich App 62; 250 NW2d 541 (1976), *People v Cousino,* 81 Mich App 416; 265 NW2d 355 (1978). These cases, it seems to me, translate into an appellate policy denying the trial court the use of the power of the purse against litigants who insist upon exercising their constitutional right to trial; in some contexts, that is due process. Nevertheless, if the majority opinion is upheld on this issue, it could revolutionize the practice of civil law in this

state, for it is the business of judges to judge, not to intimidate. I fear the potential for abuse if this ruling is sustained.

In the very recent case of *Charter Twp of Canton v Kaufman,* 87 Mich App 719; — NW2d — (1978), the trial court awarded attorney fees and the argument to sustain the award was that the court had jurisdiction under GCR 1963, 504.1(2), claiming the court acquired the power to award the attorney fees from the language "upon such terms and conditions as the court deems proper". Our Court had little difficulty turning away that contention and ruled that:

"While this rule may empower the court to tax costs as a condition of dismissal, it may still tax only those costs authorized by statute, GCR 1963, 526.1. Attorney fees are taxable only as authorized by statute, MCL 600.2405; MSA 27A.2405." 87 Mich App 721.

I would reverse.

## ADDENDUM

Since the writing of the above dissent Judge MARUTIAK has communicated to this panel the following:

"I would concur in the Opinion of Judge Holbrook. I feel that he has adequately distinguished this case from the case of Hackett v Connor on the issue of the jury trial.

"I would, however, concur with that portion on the dissenting opinion of Judge Kelly which would deny the award of $2500.00 in attorney fees. I find insufficient compliance with GCR [1963], 111.6."

Therefore the award of attorney fees is reversed. As to all other aspects Judge HOLBROOK's opinion prevails.