**MINNESOTA BOXED MEATS, INC., Relator,**

v.

**Richard L. ZADWORNY, Commissioner of Jobs And Training, Respondents.**

No. C5–86–1979.

Court of Appeals of Minnesota.

April 14, 1987.

Minnesota Boxed Meats, Inc., pro se.

Ann E. Juergens, William J. Cashman, Cert. Student Atty., St. Paul, for Richard L. Zadworny.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by
CRIPPEN, P.J., and WOZNIAK, and STONE *, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Relator Minnesota Boxed Meats, Inc. appeals by writ of certiorari from the Commissioner's determination that employee Richard Zadworny's numerous errors constituted mere negligence, rather than misconduct. We affirm.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

Richard Zadworny began working for Minnesota Boxed Meats, Inc. as a warehouseman in January 1985. In October 1985, the employer initiated a system of monitoring its inventory and employee performance. As a senior warehouseman, Zadworny was accountable for the performance and mistakes of junior employees.

Between November and April, Zadworny was held responsible for 16 shipping errors, and, as a result of these numerous errors, Zadworny was discharged. In a memorandum written on the day of Zadworny's discharge, the employer's controller indicated that Zadworny was terminated "for poor performance."

Zadworny applied for unemployment compensation and was granted benefits. The employer appealed to a department referee, arguing that Zadworny's repeated errors were of such degree and recurrence as to constitute misconduct. The referee agreed with the employer, noting that Zadworny was intelligent and articulate, yet failed to improve his job performance after being fairly warned by the employer. The referee concluded that Zadworny's conduct should not be excused as inability, but rather, rose to the degree of culpability required for a determination of misconduct. The referee's findings in support of this conclusion may be summarized as follows:

1) On November 20, 1985, Zadworny failed to double-check shipment orders, resulting in the shipment of the wrong product to two customers. That day, the employer's controller stressed to Zadworny the importance of checking shipment orders carefully before they left the premises.

2) On November 5,[1] 1985, Zadworny shipped the wrong product to a customer, claiming his mistake resulted from the employer's high inventory volume. The employer again stressed to Zadworny the importance of accurate shipments, and suspended him for two days.

1. This finding by the referee is incorrect. The record reveals that the correct date is November 27.

3) From January 29 through February 17, 1986, the employer discovered approximately 20 shipping errors. Of these 20, it was determined that Zadworny was responsible for approximately 18.[2] Zadworny was suspended for 5 days.

4) On April 18, 1986, Zadworny overshipped an order, and on April 22 he shipped an incorrect order to a customer.

Zadworny appealed to a Commissioner's representative, challenging the referee's determination of misconduct. After reviewing the record, the representative affirmed the referee's findings of fact in their entirety, but concluded that these instances of poor work performance did not demonstrate misconduct necessary to disqualify Zadworny from receiving unemployment compensation benefits. The representative reasoned that there was "no showing on the record that there was intentional or substantial disregard of the employer's interest," or that Zadworny's conduct exhibited a lack of concern for his job. The employer has appealed.

## ISSUE

Did Zadworny's poor work performance rise to the level of "misconduct," disqualifying him from the receipt of unemployment compensation benefits?

## ANALYSIS

An employer has the burden of proving by a fair preponderance of the evidence that an employee was discharged for misconduct disqualifying him from the receipt of unemployment compensation benefits. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973). "Misconduct," for unemployment compensation purposes, has been defined as follows:

[T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of [its] employee,

or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" * * *.

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)).

As this language indicates, poor work performance is generally not considered disqualifying misconduct. *See Swanson v. Columbia Transit Corp.,* 311 Minn. 538, 540, 248 N.W.2d 732, 732 (1976); *Ray N. Welter Heating Co. v. Larson,* 394 N.W.2d 267, 268 (Minn.Ct.App.1986); *Harringer v. AA Portable Truck & Trailer Repair, Inc.,* 379 N.W.2d 222, 224 (Minn. Ct.App.1985). However, an employee's deliberate work avoidance and unnecessary delays or overall poor performance evidencing a disregard for the employer's interests may constitute misconduct. *See, e.g., Barstow v. Honeywell, Inc.,* 396 N.W.2d 714, 715 (Minn.Ct.App.1986); *Krantz v. Larco Division,* 363 N.W.2d 833, 834 (Minn.Ct. App.1985).

The employer concedes that Zadworny was discharged for his numerous shipping errors (i.e., poor work performance), but argues that Zadworny failed to be more careful because he believed the employer was prejudiced against him as a result of his participation in union activities. Thus, the employer argues Zadworny's actions demonstrated substantial disregard of the employer's interests.

The Commissioner's representative specifically found:

There is no showing on the record that there was intentional or substantial disregard of the employer's interests.

---

**2.** This finding is unsupported by the record. Rather, it appears that out of 13 reported errors

during that same period, Zadworny was responsible for 11.

This court must review the decision of the Commissioner's representative, and not that of the referee. *Tester v. Jefferson Lines,* 358 N.W.2d 143, 145 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Mar. 13, 1985). The Commissioner's findings should be upheld if there is evidence in the record which reasonably tends to sustain them. *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983).

Zadworny testified that he did not intentionally misship any of the employer's products, that his mistakes were the result of human error, that he gave the company 100%, and that he came in to work as a backup driver, even though he was going to school full-time and had to skip out of classes. This evidence supports the Commissioner's determination that Zadworny's misshipments did not constitute misconduct. In addition, the record discloses that Zadworny was a senior warehouseman and, as such, was held responsible for the misshipments of junior employees. This would appear to account for the apparently large number of shipping errors.

The employer contends that Zadworny's poor performance began in October 1985, and was motivated by a belief that the employer was prejudiced against him because of his union activities. However, the employer's controller indicated at one point that "[Zadworny's] overall performance was *consistently* marginal but was good enough to pass *probation* " (emphasis added). This evidence contradicts the employer's claim that Zadworny's poor job performance began in response to perceived prejudice by the employer.

### DECISION

The record supports the Commissioner's determination that Zadworny's poor job performance did not rise to the level of misconduct necessary to disqualify him from receiving unemployment compensation benefits.

Affirmed.