*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES W. DELIZ,

      Plaintiff-Appellant,

v

JOHN A. GUSMANO, THOMAS J. GUSMANO, and ANTHONY J. GUSMANO

      Defendants-Appellees.

UNPUBLISHED
May 18, 2023

No. 360541
Macomb Circuit Court
LC No. 2021-002786-CB

JOHN B. GUSMANO,

      Plaintiff/Counterdefendant-Appellee,

v

JAMES W. DELIZ,

      Defendant/Counterplaintiff-Appellant.

No. 360873
Macomb Circuit Court
LC No. 2021-001608-CB

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

In Docket No. 360541, James Deliz (Deliz), plaintiff in Macomb County Case No. 2021-002786-CB, appeals as of right the order of the trial court granting summary disposition under MCR 2.116(C)(10) in favor of defendants, John A Gusmano (John A), Thomas John Gusmano (Thomas John), and Anthony Gusmano (Anthony), which dismissed Deliz's claim for tortious interference with a contract. In Docket No. 360873, Deliz, the defendant and counterplaintiff in Macomb County Case No. 2021-001608-CB, appeals as of right the order of the trial court granting summary disposition in favor of plaintiff John B Gusmano (John B) on Deliz's claim for breach of contract and Deliz's counterclaim for unjust enrichment. We affirm in both appeals.

## I. BACKGROUND

These related cases arise from a shareholder dispute in a family-owned texturing business, Tenibac-Graphion, Inc. (Tenibac), and the sale of the business in August 2018. John A and Thomas John are brothers, and Anthony is one of John A's son. John A has two other sons, John B and Thomas Joseph Gusmano (Thomas Joseph). Thomas Joseph is not a party in either of these cases. Deliz is a cousin of John B, Anthony, and Thomas Joseph.

For several years before August 2018, Deliz, John A, Thomas John, and Anthony were officers, directors, and shareholders of Tenibac. Before May 2017, John B and Thomas Joseph were also Tenibac shareholders. In May 2017, Deliz, John A, Thomas John, and Anthony agreed to purchase John B's and Thomas Joseph's outstanding Tenibac stock. For his part, Deliz entered into a stock purchase agreement with John B, agreeing to purchase 50% of his Tenibac stock for $915,200. The parties do not dispute that John B duly transferred his stock to Deliz, and Deliz paid John B for his stock, according to the terms of the May 2017 stock purchase agreement.

Later in 2017, after John B and Thomas Joseph sold their Tenibac stock, another company, Standex Corporation, offered to purchase Tenibac. Following negotiations, the sale closed in August 2018 for a negotiated base price of $57.4 million.[1]

But approximately a week before the Standex closing, Deliz, John A, Thomas John, and Anthony attended a Tenibac shareholders meeting to discuss the proposed transaction. At that August 2018 meeting, the four shareholders agreed to pay both John B and Thomas Joseph an additional $1.5 million each for the stock they sold in May 2017. According to the agreement, each of the four shareholders agreed to pay $750,000 from the proceeds of the Standex transaction. The parties refer to this agreement as the "reconciliation agreement." Deliz was required to pay half of John B's additional $1.5 million payment. It is undisputed that John A, Thomas John, and Anthony each paid $750,000 pursuant to the reconciliation agreement. It is also undisputed that in September 2019, over a year after the reconciliation agreement and the closing of the Standex deal, Deliz made a partial payment of $375,000 to John B, but refused to pay the remaining $375,000 amount. He alleged that he agreed to pay the additional $750,000 to John B only because the other shareholders—John A, Thomas John, and Anthony—threatened to call off the sale to Standex if Deliz did not agree to the reconciliation agreement.

In May 2021, John B brought a breach-of-contract action against Deliz, in Docket No. 360873, to recover the additional $375,000 that Deliz refused to pay under the reconciliation agreement. Deliz filed a counterclaim for unjust enrichment, seeking to recover the $375,000 he had already paid to John B. In July 2021, Deliz filed a separate action against John A, Thomas John, and Anthony, in Docket No. 360541, alleging tortious interference of a contract. Deliz alleged that John A, Thomas John, and Anthony tortiously interfered with his May 2017 stock purchase agreement with John B by threatening to not proceed with the Standex purchase if Deliz refused to pay John B an additional $750,000 for his stock.

_____

[1] This reflects a purchase between $22,800 per share and $22,960 per share for 2,500 outstanding shares (250 Class A shares, and 2,250 Class B shares). Based on the closing documents for the Standex deal, the parties valued Class A and Class B shares the same, despite the fact that Class A shares were voting shares.

John B moved for summary disposition of both his breach-of-contract claim and Deliz's counterclaim for unjust enrichment in Docket 360873. He argued there was no genuine issue of material fact that he was entitled to the $375,000 and Deliz still owed him under the reconciliation agreement. John B also asserted the reconciliation agreement was not an improper amendment of the stock purchase agreement. He further urged the trial court to reject Deliz's defense of duress and to dismiss Deliz's counterclaim for unjust enrichment. Anthony moved for summary disposition of Deliz's tortious-interference claim in Docket 360541, arguing that Deliz could not establish a breach of the underlying contract because he and John B fully performed under the terms of the stock purchase agreement.

The trial court granted both motions.[2] Regarding John B's motion, the trial court rejected Deliz's reliance on the preexisting duty rule and found consideration for the reconciliation agreement in the remaining shareholders' decision to proceed with the Standex sale. And regarding Anthony's motion, the court found that Deliz failed to show a breach of the stock purchase agreement, and, therefore, his tortious-interference claim failed as a matter of law. The court thereafter entered a judgment in Docket 360873, awarding John B $375,000 for his breach-of-contract claim. These appeals by Deliz followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Wittenberg v Bulldog Onsite Solutions, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359424); slip op at 2. In both cases, the trial court granted summary disposition under MCR 2.116(C)(10).[3] " 'A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim.' " *Id*. at ___; slip op at 2, quoting *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When deciding a motion under MCR 2.116(C)(10), the trial court must "consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at ___; slip op at 2 (quotation marks and citation omitted). "Such a motion may only be granted when there is no genuine issue of material fact." *Id*. at ___; slip op at 2 (quotation marks and citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. at ___; slip op at 2-3.

Generally, summary disposition is premature before discovery is complete on a disputed issue. *Village of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 262; 911 NW2d 241 (2017). Summary disposition may be granted even if discovery has not been completed, however, if "further discovery does not stand a fair chance of uncovering factual support for the position of

---

[2] Although only Anthony moved for summary disposition in Docket 360541, because all three defendants were similarly situated, the court also dismissed Deliz's tortious interference claims against John A and Thomas John.

[3] Anthony moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Though the trial court did not specify the subrule under which it granted summary disposition, it considered documentary evidence in doing so. Accordingly, we treat the grant of summary disposition in favor of Anthony (and John A and Anthony) as having been decided under MCR 2.116(C)(10). See *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506-507; 885 NW2d 861 (2016).

the party opposing the motion." *Id.* (quotation marks and citation omitted). A party opposing summary disposition on the ground that discovery has not yet been completed must provide some independent evidence that a factual dispute exists. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215; 859 NW2d 238 (2014).

The existence of a contract is a question of law we review de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "The question as to what constitutes duress is a matter of law, but whether duress exists in a particular case is a question of fact." *Norton v Mich State Highway Dep't*, 315 Mich 313, 319; 24 NW2d 132 (1946) (quotation marks and citation omitted).

## III. TORTIOUS INTERFERENCE WITH A CONTRACT IN DOCKET NO. 360541

In Docket No. 360541, Deliz argues that the trial court erred by dismissing his claim for tortious interference with a contract against John A, Thomas John, and Anthony. We disagree.

To establish a claim for tortious interference with a contract, a plaintiff must show "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Relative Time Films, LLC v Covenant House Mich*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359645); slip op at 4 (quotation marks and citation omitted). "Damages is an element as well." *Id*. at ___; slip op at 4 (citation omitted).

Deliz argues on appeal that the "critical issue" in both cases is the legality of what he describes as John A, Thomas John, and Anthony's threat to abort the sale of Tenibac stock to Standex. He argues that this purported threat rendered his agreement to pay additional money to John B for the earlier sale of stock unenforceable. Deliz asserts that the trial court erred by ignoring evidence relating to that transaction. According to Deliz, that evidence established genuine issues of material fact regarding the validity of the reconciliation agreement. He also asserts that further discovery could have produced additional factual support for his challenges to the validity of the reconciliation agreement. The trial court found that these arguments all involved the third element of a tortious-interference claim—whether there was an unjustified instigation of the breach of a contract by defendants. It concluded, however, that it was unnecessary to reach these arguments because Deliz was unable to establish the second element of his tortious interference claim— breach of a contract in the first instance. We agree with the trial court.

The trial court did not err in finding that Deliz failed to establish a breach of a contract for purposes of his tortious-interference claim. Deliz alleged that John A, Thomas John, and Anthony tortiously interfered with the May 2017 stock purchase agreement between him and John B. This is because both parties satisfied their contractual duties, the contract was completed, therefore, there was nothing left to breach. Cf *WMCV Phase 3, LLC v Shushok & McCoy, Inc*, 750 F Supp 2d 1180, 1195-1196 (D Nev, 2010) (noting that in an earlier case there was "nothing left to breach" where the contract alleged to have been interfered with was "properly terminated under its own terms prior to the alleged interference . . . .").[4] Here, it is undisputed that Deliz and John B fully

---

[4] Although not binding on state courts, lower federal court decisions may be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

-4-

performed under the May 2017 stock purchase agreement. For his tortious interference claim, Deliz argued that the purported threat of the other shareholders to abort the Standex sale if he did not agree to pay an additional $750,000 to John B amounted to "an illegal and unlawful interference by [d]efendants with the rights and obligations of [Deliz] and [John B]" under the May 2017 stock purchase agreement. He argued that the additional payment functionally "increased the rights of [John B] and the corresponding obligations of [Deliz]." But as the trial court recognized, a breach of the contract that is the subject of a tortious interference claim is an essential element of the claim. And because Deliz had neither shown, nor alleged, that the contract allegedly interfered with—the May 2017 stock purchase agreement—was breached in any way, his tortious interference claim failed. The trial court, therefore, did not err by granting summary disposition of Deliz's claim for tortious interference with a contract in favor of John A, Thomas John, and Anthony.[5]

## IV. BREACH OF CONTRACT AND UNJUST ENRICHMENT IN DOCKET NO. 360873

In Docket No. 360873, John B brought a claim for breach of the reconciliation agreement.[6] Deliz does not dispute that he made this agreement, or that he only paid John B $375,000 pursuant to that agreement. He instead argues that the agreement is unenforceable for lack of consideration and that he was under duress at the time he entered the agreement. We disagree and address each argument in turn.

## A. THERE WAS LEGAL CONSIDERATION FOR THE RECONCILIATION AGREEMENT

Deliz first argues that the trial court erred in granting summary disposition in favor of John B on his breach-of-contract claim because there was a lack of consideration. We disagree.

To establish a claim for breach of contract, a party must establish that: "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). A valid and enforceable contract exists when five requirements are met: "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016). The third element—legal consideration—is the critical element here. "To have consideration there must be a bargained-for exchange"; "[t]here must be a benefit on one

---

[5] We acknowledge Deliz's argument that further discovery could have revealed additional facts regarding the legality of John A, Thomas John, and Anthony's conduct at the shareholders' meeting. Regardless, he still cannot show that there was a breach of the May 2017 stock purchase agreement, a necessary element of his tortious-interference claim. Accordingly, the trial court did not prematurely grant summary disposition.

[6] John B, as a third-party beneficiary of the reconciliation agreement, may sue for a breach of that agreement, subject to any "infirmities" of it. See MCL 600.1405 (providing third-party beneficiaries' rights to enforce contracts).

side, or a detriment suffered, or service done on the other." *Id.* (citation omitted). If there is consideration, courts generally do not inquire into the sufficiency of the consideration. *Id.*

Deliz argues that the August 2018 reconciliation agreement that is the basis for John B's breach of contract claim is unenforceable for lack of consideration. We disagree. Here, the August 2018 reconciliation agreement was supported by legal consideration. In consideration for Deliz's agreement to pay $750,000 to John B, the other shareholders (John A, Thomas John, and Anthony) agreed to move forward with the sale of Tenibac to Standex. They also agreed to each contribute their own $750,000 to compensate John B and Thomas Joseph under the reconciliation agreement.

Deliz acknowledges that the only consideration for his promise to pay $750,000 to John B was John A, Thomas John, and Anthony's promise to proceed with the Standex sale. But he argues that this promise does not constitute adequate consideration because John A, Thomas John, and Anthony had a preexisting duty to proceed with the sale by virtue of alleged agreements between themselves, and with Standex, to sell their shares to Standex. "Under the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise." *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 158; 719 NW2d 553 (2006) (citations and quotation marks omitted).

Deliz's argument about the preexisting duty rule is unpersuasive because he failed to provide sufficient evidentiary support for his claim that, at the time of the August 2018 shareholders meeting, there were independent agreements between the other shareholders, or between them and Standex, requiring them to sell their stock to Standex. Deliz asserts that because John A, Thomas John, and Anthony were already contractually bound to each other and to Standex to complete the scheduled sale, "[t]heir promise to effect their preexisting duty to follow through with the sale of their Tenibac stock to Standex does not constitute valid consideration." Nothing in the record sufficiently supports this contention.

Deliz first points to statements in his affidavit regarding the supposed agreements. But the statements in Deliz's affidavit merely reflect his personal belief that John A, Thomas John, and Anthony had made separate agreements among themselves and with Standex to sell their Tenibac stock. The statements are conclusory and do not provide any detail or other information explaining the basis for his belief. A party opposing a motion for summary disposition cannot establish a genuine issue of material fact with unsupported conclusory statements. See *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 470; 646 NW2d 455 (2002) (explaining that it "is not enough to create a genuine issue of material fact to provide conclusory statements that a duty was breached."); *Quinto v Cross & Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996) (concluding that an affidavit providing "mere conclusory allegations and [that] was devoid of detail" was insufficient to avoid summary disposition under MCR 2.116(C)(10)). Accordingly, Deliz's conclusory statements in his affidavit are insufficient to avoid summary disposition.

Deliz also relies on a retention letter, indicating that Tenibac retained an investment bank, Angle Advisors. Tenibac retained Angle Advisors to assist it in the evaluation and valuation of the company, work with Tenibac's management team to develop its business, and assist in executing a recommended strategy. Nothing in the letter supports Deliz's contention that the other shareholders and Standex consummated their agreement on the Standex sale before the purported threat at the shareholders meeting, let alone before closing on the Standex deal. We, therefore,

reject Deliz's argument that the retention letter amounted to independent evidence of a factual dispute related to whether the other shareholders could stop the Standex sale when they allegedly threatened him. The trial court also considered other documents submitted by Deliz, including the certificate of vote from Standex, an amendment to Tenibac's articles of incorporation, and various termination documents. The court properly found that although the additional documents demonstrated Standex's purchase of the remaining Tenibac shares, they failed to show that the shareholders had a preexisting duty to complete the sale at the time they made the reconciliation agreement. Deliz, therefore, has failed to establish that the preexisting duty rule applies.

John A, Thomas John, and Anthony's agreement not to thwart the anticipated Standex deal was valuable consideration that was not part of a preexisting duty based on the record before the trial court. Accordingly, Deliz's argument that the contract was void for lack of consideration fails.[7]

## B. DELIZ CANNOT ESTABLISH ECONOMIC DURESS BECAUSE THERE WAS NO ILLEGAL CONDUCT BY THE OTHER SHAREHOLDERS

Deliz also argues that the reconciliation agreement is unenforceable because he was under economic duress when he agreed to it. We disagree.

"A contract may be deemed unenforceable if it was executed under duress." *Skaates v Kayser*, 333 Mich App 61, 78; 959 NW2d 33 (2020) (citation omitted). "To successfully demonstrate duress, a party must show 'that they were illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes." *Id*. (citation omitted). But "[t]he fear of financial ruin alone does not demonstrate economic duress; it must also be established that the person applying the coercion acted unlawfully." *Id*. at 78-79 (citation omitted). "Illegality is an element of duress," *Enzymes of America v Deloitte*, 207 Mich App 28, 35; 523 NW2d 810 (1994), rev'd in part on other grounds 450 Mich 889 (1995), but it is not duress for a party to threaten to do that which it has a lawful right to do, see *Hackley v Headley*, 45 Mich 569, 576; 8 NW 511 (1881). See also *Apfelblat v Nat'l Bank Wyandotte-Taylor*, 158 Mich App 258, 264; 404 NW2d

---

[7] The other shareholders' affidavits also state that the reconciliation agreement contained additional consideration: namely, compensating John B and Thomas Joseph addressed John A's concern of potential legal claims by them because of the substantially lower price that was paid for their stock in May 2017 compared to the negotiated price per share with Standex. We acknowledge that a promise to pay John B additional funds from the proceeds of the Standex sale to minimize the risk of a legal claim against Deliz and the other shareholders could qualify as consideration for Deliz's promise to pay the additional funds to John B. See *Rinke v Automotive Moulding Co*, 226 Mich App 432; 573 NW2d 344 (1997). The record, however, is silent on whether John B provided a release in exchange for the additional payment. The parties have not stated how, if at all, a payment to a third-party beneficiary without release would limit their potential liability to John B. Because the agreement not to thwart the Standex deal was valuable consideration, we need not address this alternative theory of consideration.

725 (1987) (holding that "a creditor may properly warn of his intentions to pursue collection without being subject to a defense of duress.").[8]

Regardless of whether Deliz feared financial ruin because of the other shareholders' alleged threats to thwart the Standex deal, he has failed to establish the existence of illegal conduct by the other shareholders. As proof of an unlawful act, Deliz asserts that John A and Thomas John, the controlling shareholders, violated their fiduciary duty to manage Tenibac in a way that produced the best possible return for Deliz, a minority shareholder. Deliz's argument is unpersuasive for two reasons. First, Deliz did not bring a claim for breach of fiduciary duty.

Second, Deliz failed to establish a genuine issue of material fact that the decisions made by John A or Thomas John amounted to a breach of the fiduciary duty that they owed Deliz. In addition to directors and officers, majority shareholders owe fiduciary duties to the corporation and to minority shareholders. *Salvadore v Connor*, 87 Mich App 664, 675; 276 NW2d 458 (1978). This duty requires a majority shareholder to act with " 'the utmost good faith in its control and management as to the minority[,] and it is the essence of this trust that it must be so managed so as to produce to each shareholder[] the best possible return upon his investment.' " *Id*., quoting 6 Callaghan's Michigan Civil Jurisprudence (2d ed), § 166, p 365. John A and Thomas John as controlling shareholders, owed Deliz, a minority shareholder, a duty of good faith, and to act in a way to obtain the best possible return on investments he made. *Salvadore*, 87 Mich App at 675. The Standex deal promised a significant return on Deliz's investment. But the disparity between that deal and the May 2017 stock purchase was significant, and it posed a significant litigation risk from John B and Thomas Joseph. Each of the remaining shareholders indicated in their affidavits that this risk was the motivation for the reconciliation agreement. Deliz does not largely dispute that motivation—the attempt to make John B and Thomas Joseph whole even without securing an explicit release.[9] There was not a genuine issue of material fact that the majority shareholders, and holders of the voting shares, acted in good faith and in a way that they believed would obtain the best possible return even for Deliz. Put another way, there is no dispute that the remaining

---

[8] Although *Apfelblat* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 5 n 1. This rule applies to other decisions of this Court decided before November 1, 1990, referenced in this opinion.

[9] This appears to have been a tactical business decision, rather than a legal formality. As stated, John B did not provide a formal release in exchange for the payments he received under the reconciliation agreement. Rather, the payments appear to have been an informal attempt to dissuade or discourage future legal action. When we add the amounts John B received under the reconciliation agreement to the amounts he received in exchange for his shares under the May 2017 stock purchase agreement, John B still only received approximately ⅓ of the money that he would have received if he had sold his shares under the Standex deal instead of the May 2017 stock purchase agreement.

shareholders believed the Standex deal without the reconciliation agreement was less valuable and riskier than the Standex deal with the reconciliation agreement.

Deliz also asserts that John A and Thomas John "engaged in unlawful majority shareholder oppression against [him]." Under MCL 450.1489(1), "[a] shareholder may bring an action . . . to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." Deliz argues that John A and Thomas John engaged in unlawful majority shareholder oppression by calling him to the August 2018 shareholders meeting and threatening to void the sale to Standex if he did not agree to make an additional payment to John B.

We similarly reject Deliz's arguments for two reasons. First, Deliz did not bring a shareholder-oppression claim. Second, Deliz fails to explain how the alleged conduct by John A and Thomas John was illegal, fraudulent, or otherwise unfair and oppressive to him as a shareholder. A minority shareholder of a closely held corporation has a cause of action for shareholder oppression against majority shareholder. See *Estes v Idea Engineering & Fabricating, Inc*, 250 Mich App 270, 278-279; 649 NW 2d 84 (2002). But, here, the undisputed evidence established that the reconciliation agreement affected all of the shareholders equally—John A, Thomas John, Anthony, and Deliz each had to pay an additional $750,000 under it. And any decision to call off the Standex sale would have also affected the four shareholders equally. There is no allegation or evidence that Deliz was compelled to agree to any term that did not equally apply to the other shareholders, or that affected him any differently, financially or otherwise, than the other shareholders. Accordingly, the trial court did not err by rejecting Deliz's claim of economic duress.

For those reasons, we conclude that Deliz cannot establish any factual dispute supporting his claim that the reconciliation agreement is unenforceable. There is no dispute that Deliz failed to pay John B the additional $375,000 required under that agreement. The trial court, therefore, did not err by granting John B's motion for summary disposition on his breach-of-contract claim or by entering a $375,000 judgment in John B's favor.

## C. DELIZ CANNOT ESTABLISH THAT JOHN B'S RECEIPT OF $375,000 UNDER THE RECONCILIATION AGREEMENT WAS INEQUITABLE

Deliz also argues that the trial court erred by granting summary disposition in favor of John B with respect to Deliz's counterclaim for unjust enrichment. We disagree.

Establishing an unjust-enrichment claim requires a showing of the "receipt of a benefit by the defendant from the plaintiff," and "an inequity resulting to [the] plaintiff from [the] defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013).

There is no dispute that Deliz made a partial payment of $375,000 to John B, in accordance with the reconciliation agreement. Deliz argues that John B's receipt of this payment is inequitable because the reconciliation agreement is unenforceable. As we concluded, however, the trial court did not err by finding that Deliz failed to establish a factual question regarding his claim that the agreement was unenforceable. Deliz, therefore, cannot establish that John B's receipt of the partial

payment pursuant to that agreement was inequitable. Accordingly, the trial court's decision to summarily dismiss Deliz's counterclaim for unjust enrichment was not erroneous.

For the reasons stated in this opinion, we affirm in both appeals.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado