## ENZYMES OF AMERICA, INC v DELOITTE, HASKINS & SELLS

Docket No. 153426. Submitted May 17, 1994, at Detroit. Decided September 19, 1994, at 9:45 A.M. Leave to appeal sought.

Enzymes of America, Inc., Jo Ann Braxton, Earl J. Braxton, and others brought an action in the Wayne Circuit Court against Deloitte, Haskins & Sells and Brock E. Plumb, alleging accounting malpractice. The defendants counterclaimed for payment on a promissory note executed by one of the plaintiffs and personally guaranteed by the Braxtons. The court, Michael J. Talbot, J., granted summary disposition for the defendants, ruling that the plaintiffs' claim was barred under the two-year limitation period of MCL 600.5805(4); MSA 27A.5805(4), and rejecting the plaintiffs' defenses of duress with respect to the personal guaranty and lack of consideration with respect to the promissory note. The plaintiffs appealed.

The Court of Appeals *held:*

1. Administrative Order No. 1994-4 constrains the Court of Appeals to follow *Local 1064, RWDSU AFL-CIO v Ernst & Young,* 204 Mich App 445 (1994), and hold that the two-year limitation period of MCL 600.5805(4); MSA 27A.5805(4) does not apply to actions for accounting malpractice. Given this constraint, the Court of Appeals holds that actions for accounting malpractice are subject to the three-year limitation period of MCL 600.5805(8); MSA 27A.5805(8). On remand, the trial court is to conduct further proceedings regarding allegations of malpractice that are not barred by the three-year period of limitation.

2. To prevail on their claim of duress, the plaintiffs needed to establish that they were compelled illegally or coerced to act by fear of serious injury to their persons, reputations, or fortunes. The plaintiffs' contention that their original books and records were withheld illegally from them or their new accountants until the promissory note and guaranty were executed for fees

REFERENCES

Am Jur 2d, Contracts §§ 117, 126, 129, 165, 234; Duress and Undue Influence §§ 1, 6, 7, 24.

Economic duress or business compulsion in execution of promissory note. 79 ALR3d 598.

owed to the defendants was not supported by the record evidence. Accordingly, the trial court did not err in rejecting the plaintiffs' claim of duress.

3. No consideration is necessary for an instrument or obligation given in payment of or as security for an antecedent obligation. The trial court did not err in rejecting the plaintiffs' claim of lack of consideration for the promissory note because the note was executed in payment of or as security for an antecedent obligation owed by the plaintiffs to the defendants.

Affirmed in part, reversed in part, and remanded.

1. WORDS AND PHRASES — DURESS.
   Duress is compulsion or coercion by which a person illegally is forced to act by fear of serious injury to person, reputation, or fortune.

2. CONTRACTS — CONSIDERATION — ANTECEDENT OBLIGATIONS.
   Consideration is not required for an instrument or obligation given in payment of or as security for an antecedent obligation (MCL 440.3408; MSA 19.3408).

*Gordon, Cutler & Hoffman* (by *Donald M. Cutler*), for the plaintiffs.

*Dykema Gossett* (by *Daniel F. Stella* and *Thomas W. B. Porter*), for the defendants.

Before: MICHAEL J. KELLY, P.J., and CORRIGAN and C. D. CORWIN,* JJ.

MICHAEL J. KELLY, P.J. Plaintiffs appeal as of right an order of the circuit court granting defendants' motion for summary disposition under MCR 2.116(C)(7) and (10). We affirm in part, reverse in part, and remand.

I

This is an action for malpractice against the accounting firm of Deloitte, Haskins & Sells and one of its partners, Brock E. Plumb. Deloitte was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

engaged in 1983 to audit financial statements for plaintiffs Enzymes of America, Inc., and Porta-John Corporation. Deloitte conducted further audits in 1984 and 1985.

In connection with the 1983 audit, Deloitte advised Enzymes to merge with Porta-John, to suspend an initial public offering of stock under securities regulation Form S-18, and to use an accrual method of accounting. Plaintiffs followed Deloitte's advice on all these matters.

During the 1985 audit, Deloitte concluded that the accrual method was not appropriate and advised a return to the cash method of accounting. In October 1985, Deloitte withdrew its opinion on the 1984 audit, and in December 1985, it issued revised audit reports on both the 1984 and the 1985 financial statements using the cash accounting method. Plaintiffs allege that these actions decreased their net worth, placed them in default of loans, and hampered their ability to raise capital. In 1990, Porta-John filed for bankruptcy.

Though Deloitte did not conduct any more audits of plaintiffs' financial statements after 1985, it did assist in the filing of a registration statement and amendments with the Securities and Exchange Commission in 1986, which included a review of unaudited financial statements for the first ten months of the 1986 fiscal year.

By June 23, 1986, Deloitte had billed Enzymes for fees of $187,000, which remained unpaid. Deloitte decided to withhold its working papers from the successor accounting firm until it received $30,000 in payment of outstanding bills and a promissory note from Porta-John for $157,000, personally guaranteed by plaintiffs Braxton. In July 1986, Enzymes paid the $30,000, and Porta-John executed the requested promissory note, signed by the Braxtons. After the due date passed,

Deloitte demanded payment on the promissory note and guaranty.

Plaintiffs filed the present action on May 19, 1988. Defendant counterclaimed for payment of the promissory note and guaranty. The trial court granted defendants' motion for summary disposition on all claims.

II

The central issue is whether the trial court erred in finding that plaintiffs' claims are barred by the two-year statute of limitations for professional malpractice, MCL 600.5805(4); MSA 27A.5805(4). Our first task in resolving this issue is to determine which statute-of-limitations provision applies to plaintiffs' claims. Plaintiffs argue that the trial court should have applied the six-year statute of limitations in MCL 600.5813; MSA 27A.5813. We disagree.

A

In *Local 1064, RWDSU AFL-CIO v Ernst & Young,* 204 Mich App 445; 516 NW2d 492 (1994), this Court resolved a conflict between *Nat'l Sand, Inc v Nagel Construction, Inc,* 182 Mich App 327; 451 NW2d 618 (1990), and *Bacco Construction Co v American Colloid Co,* 148 Mich App 397; 384 NW2d 427 (1986), adopting the opinion in *Nat'l Sand.* There, the Court held that MCL 600.5805; MSA 27A.5805 applies to "traditional, common-law torts," including malpractice, regardless of whether the damage is financial in nature or consists of injury to person or property. 182 Mich App 335-336.

The Court in *Local 1064* also determined that, among the limitation periods of § 5805, the two-

year period for malpractice in subsection 4 does not apply to malpractice actions against accountants. The panel declined to address whether the three-year limitation period in subsection 8 or the six-year period in §§ 5813 and 5807(8) applies to accounting actions because the complaint in that case was filed within three years of the alleged wrongs.

While we agree with the reasoning of *Nat'l Sand,* we disagree with the ultimate holding in *Local 1064* that the two-year limitation period does not apply to accountants and follow that holding only because we are bound to do so under Administrative Order No. 1994-4. We consider the rationale in *Local 1064* too attenuated. The holding certainly was not dictated by the fact that § 5805(4) does not apply to engineers and funeral home directors, see *Nat'l Sand, supra,* and *Dennis v Robbins Funeral Home,* 428 Mich 698; 411 NW2d 156 (1987). Nor do we find dispositive the fact that there are no Michigan cases recognizing a common-law malpractice action against accountants before the enactment of § 5805(4) in 1961 as part of the Revised Judicature Act. The silence of Michigan jurisprudence on the applicability of the term "malpractice" in the accounting context leads us to look outside Michigan. Respectable sources indicate widespread recognition of the concept of "accountant malpractice" in 1961, and the cases since then demonstrate that the trend in 1961 was clearly toward, and not away from, such recognition. See, e.g., *Ronaldson v Moss Watkins, Inc,* 13 La App 350, 353; 127 So 467 (1930); *L B Laboratories, Inc v Mitchell,* 39 Cal 2d 56, 59, 61; 244 P2d 385 (1952); *Carr v Lipshie,* 8 AD2d 330, 332; 187 NYS2d 564 (1959), aff'd 9 NY2d 983; 218 NYS2d 62 (1961); *Duro Sportswear, Inc v Cogen,* 131 NYS2d 20, 21-23 (App Div, 1954), aff'd 137

NYS2d 829 (1955); *Cochrane v American Surety Co of New York,* 108 So 2d 315, 316 (Fla App, 1959); *Bancroft v Indemnity Ins Co of North America,* 203 F Supp 49, 53 (WD La, 1962), aff'd 309 F2d 959 (CA 5, 1962); *Lindner v Barlow, Davis & Wood,* 210 Cal App 2d 660, 665; 27 Cal Rptr 101 (1963); *Feldman v Granger,* 255 Md 288, 289-290; 257 A2d 421 (1969); *Delmar Vineyard v Timmons,* 486 SW2d 914, 915 (Tenn App, 1972); *Vernon J Rockler & Co v Glickman, Isenberg, Lurie & Co,* 273 NW2d 647, 650 (Minn, 1978). See also Hawkins, *Professional Negligence Liability of Public Accountants,* 12 Vand L Rev 797 (1959).

### B

Despite our disagreement with *Local 1064,* we must resolve the issue left unaddressed in that case: Whether plaintiffs' claims are subject to a three-year or six-year limitation period. We hold that the three-year limitation period applies under § 5805(8). This provision governs actions "to recover damages . . . for injury to a person or property." As previously noted, this language applies to traditional tort actions for financial losses. *Nat'l Sand, supra,* cited with approval in *Local 1064, supra.* The provision is "often referred to as a 'negligence' statute of limitations . . . ." *Nat'l Sand, supra* at 332. Because plaintiffs' claims in this action sound in negligence, § 5805(8) applies instead of the "catchall" six-year limitation period of § 5813.

### C

The next step is to determine the effect of § 5805(8) on plaintiffs' claims. Under a three-year limitation period, only those claims accruing after

May 19, 1985, remain viable. For purposes of § 5805(8), a claim accrues when the wrong upon which it is based was done regardless of when damage results. MCL 600.5827; MSA 27A.5827. There is no authority for a discovery rule in determining the accrual date in accounting negligence cases. We reject plaintiffs' claim that they did not "recognize" the accounting errors until long after the errors were made.

In this case, the only wrongs alleged to have occurred after May 19, 1985, involved the return to the cash accounting method in the fall of 1985 at defendant Plumb's recommendation. We remand for further proceedings regarding these claims.[1]

III

Plaintiffs Braxton also contest the trial court's grant of summary disposition of defendants' counterclaim for payment of the promissory note and guaranty. Specifically, plaintiffs argue that they made a sufficient showing of duress and of a lack of consideration to avoid summary disposition.

Deloitte moved for summary disposition of its counterclaim under MCR 2.116(C)(10). Accordingly, we must review all relevant affidavits, depositions, admissions, and other documentary evidence in favor of the nonmoving party and determine whether a genuine issue of fact exists upon which reasonable minds could differ. *Farm Bureau Mutual Ins Co v Stark,* 437 Mich 175, 184-185; 468 NW2d 498 (1991).

---

[1] As noted in plaintiffs' brief, paragraph 21 of the complaint contains the allegations of wrongdoing that occurred in the fall of 1985. It is these claims that plaintiffs may pursue on remand. If, as defendants contend, plaintiffs have abandoned these claims and there is no proof in support of them, defendants may file another motion for summary disposition under MCR 2.116(C)(10). The sufficiency of these claims is for the trial court to determine in the first instance.

### A

To succeed with respect to a claim of duress, plaintiffs must establish that they were illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes. *Apfelblat v Nat'l Bank Wyandotte-Taylor,* 158 Mich App 258, 263; 404 NW2d 725 (1987). "Fear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully." *Id.* Plaintiffs contend that this test for duress is outdated, citing *Kelsey-Hayes Co v Galtaco Redlaw Castings Corp,* 749 F Supp 794, 797, n 5 (ED Mich, 1990), in which a federal district court predicted that the Michigan Supreme Court would adopt a broader definition of duress that would not require illegality. However, the established law in Michigan remains unchanged at this time: Illegality is an element of duress. *Norton v State Hwy Dep't,* 315 Mich 313, 320; 24 NW2d 132 (1946).

In this case, plaintiffs contend that Deloitte violated MCL 339.714(1); MSA 18.425(714)(1) by conditioning the receipt of plaintiffs' original books and records on the execution of a promissory note and guaranty for unpaid fees. Section 714 provides that an accountant's records remain the property of the accountant except those records and books originally belonging to the client. Although the Braxtons submitted affidavits stating that they did not receive their original books and records until after they had executed the guaranty, the affidavits did not indicate that the return of the original books and records, as opposed to Deloitte's working papers, was conditioned on the execution of the guaranty. The affidavits submitted by Deloitte, on the other hand, unequivocally stated that nothing other than Deloitte's own working papers was used

as leverage to obtain the note and guaranty. The trial court did not err in dismissing the duress claim.

B

With respect to plaintiffs' argument that the promissory note was not supported by consideration, we note that "no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind." MCL 440.3408; MSA 19.3408. In any event, Deloitte's release of its working papers, which it was not required to do under MCL 339.714(1); MSA 18.425(714)(1), constituted consideration for the promissory note and guaranty. The adequacy of the consideration is irrelevant to the enforceability of the note and guaranty. See *Dep't of Natural Resources v Bd of Trustees of Westminster Church,* 114 Mich App 99, 104; 318 NW2d 830 (1982). Accordingly, the trial court properly granted summary disposition for defendants with respect to this claim.

Affirmed in part, reversed in part, and remanded.