**AMERIWOOD INDUSTRIES INTERNATIONAL CORPORATION, a Michigan corporation, Plaintiff,**

v.

**ARTHUR ANDERSEN & CO., n/k/a Arthur Andersen LLP, a partnership, Defendant.**

No. 1:95–CV–67.

United States District Court,
W.D. Michigan,
Southern Division.

March 11, 1997.

---

Gregory L. Curtner, Gary W. Faria, Miller, Canfield, Paddock & Stone, Detroit, MI, Marta M. Manildi, Miller, Canfield, Paddock & Stone, Ann Arbor, MI, for Plaintiff.

Richard A. Glaser, Geoffrey A. Fields, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Defendant.

## *OPINION*

HILLMAN, Senior District Judge.

This case has been pending for 25 months and is scheduled for a jury trial beginning April 8, 1997. Presently before the court are five motions. Plaintiff Ameriwood Industries ("Ameriwood") has filed four separate motions to dismiss or for summary judgment on various counterclaims and affirmative defenses. Defendant Arthur Andersen & Co. ("Andersen") has moved to partially dismiss the complaint as barred by the statute of limitations.

## *BACKGROUND*

The present malpractice and breach of contract case arose out of securities violations allegedly committed by Ameriwood (formerly Rospatch Corporation), its accountants (Andersen) and legal counsel. Shareholder actions were instituted against all three, and settlements eventually were entered.

The history of this litigation has been discussed in the previous opinions of this court dismissing plaintiff's contribution claim and various other matters. Essentially, however, Ameriwood alleges that Andersen is liable for damages to Ameriwood caused by Andersen's audits in the years 1986, 1987, 1988 and 1989, which failed to discover the existence of high-level fraud at Ameriwood. Andersen, for its part, denies negligence and raises various counterclaims based on its detrimental reliance upon fraudulent documents and information provided to it by Ameriwood.

At this time, Ameriwood has filed four separate motions to dismiss or for summary judgment. First, Ameriwood has moved to dismiss counterclaims I through IV because Andersen's own allegations fatally undermine its claims. Second, Ameriwood has moved to dismiss counterclaims V, VI and VII for failure to state a claim on which relief can be granted, and has requested sanctions. Third, Ameriwood has moved to dismiss most of Andersen's affirmative and special defenses for various assorted and overlapping reasons. Fourth, Ameriwood moves for summary judgment on counterclaims I through IV.

Andersen, for its part, has moved to dismiss Ameriwood's claims of professional negligence and breach of contract based on Andersen's performance of company audits for 1986, 1987 and 1988 fiscal years on the basis of the statute of limitations.

I will address each motion in turn.

## *DISCUSSION*

### I. *MOTION TO DISMISS COUNTS I—IV (DOCKET # 170)*

Plaintiff's first motion requires little attention. Ameriwood contends that Andersen's counterclaims alleging fraud are fatally

flawed because elsewhere in its answer and counterclaim, Andersen denies that its financial statements were materially incorrect, even in light of the after-discovered fraud.

Ameriwood's argument, however, is patently frivolous. Andersen is entitled to plead its claims and defenses in the alternative. *See* Fed.R.Civ.P. 8(e)(2). Accordingly, mere contradiction in theories does not bar a claim.

Moreover, as I read Andersen's counterclaim, it denies that its audits contained material or misleading misstatements. It asserts, however, that should a jury conclude that any misstatements were material or misleading, Ameriwood itself was responsible for the misstatements. Such an argument is not contradictory.

Accordingly, Ameriwood's motion to dismiss counterclaim counts I through IV is denied as unfounded.

## II. *MOTION TO DISMISS COUNTS V—VII (DOCKET # 171)*

■ Ameriwood has moved to dismiss or for summary judgment of counterclaim counts V, VI and VII, contending that Andersen's claims are insufficient as a matter of law. Ameriwood also seeks sanctions for costs associated with bringing the motion to dismiss, ostensibly made necessary by Andersen's refusal to agree to voluntary dismissal of the counts. Ameriwood presents extensive arguments concerning why Andersen's counts V, VI and VII are legally and factually insupportable as a matter of law. Ameriwood also attaches copies of its correspondence to Andersen seeking voluntary dismissal of the action.

The counts at issue involve three theories under which Andersen seeks contribution and attempts to avoid the effects of a contribution bar order entered at the time Ameriwood settled its part of the underlying securities litigation. In response to Ameriwood's motion to dismiss, Andersen contends that its contribution counterclaims expressly were contingent on this court's denial of Andersen's then-pending motion to dismiss Ameriwood's claim for contribution directed at Andersen. As a result, Andersen acknowledges that the counterclaims at issue, by their own terms, are now moot in light of this court's March 1996 order dismissing Ameriwood's contribution claim.

With respect to the request for sanctions, Andersen attaches its replies to the letters written by Ameriwood seeking voluntary dismissal. In those replies, which Ameriwood has not contested, Andersen states that it would be willing to agree to voluntary dismissal if the parties could agree either that Ameriwood would abandon its intent to appeal this court's decision on Ameriwood's claim for contribution or to dismiss without prejudice with an appropriate tolling agreement. Andersen expressly advised Ameriwood that it considered the counterclaims moot, that it had conducted no discovery on those claims and that they were no longer in issue in the case. Andersen advised Ameriwood that its only requirement for dismissing the claims voluntarily was to preserve its ability to reinstate the counterclaims in the event of a successful appeal by Ameriwood of its own contribution claim.

Ameriwood has not disputed the documents submitted by Andersen. Yet Ameriwood neglected to mention in its motion that Andersen was not pursuing the claims and considered them moot. Nor has Ameriwood contended that the claims should be dismissed as moot based on this court's March 1996 decision holding that contribution claims were insupportable where a party had not completely settled the claims of the nonsettling defendant. Instead, Ameriwood has asked this court to decide its motion on the merits of three claims that are no longer at issue in the case.

As Andersen observes, motions on the merits of the counterclaims are not ripe. The claims are moot on their face. The claims also are moot insofar as this court previously has held that no contribution action will lie where the settling party has not resolved the complete liability of the party from whom it seeks contribution. As a consequence, there exists no actual case or controversy before the court for deciding the legal sufficiency of such claims generally.

In addition, Ameriwood's request for sanctions is without merit. Andersen was not required to prejudice its rights in the event

Ameriwood prevailed on appeal. Once Andersen abandoned its claims, both by the terms of the counts themselves and by express notification to Ameriwood, Ameriwood could have obtained dismissal on the basis of mootness in light of the court's March 1996 decision. Ameriwood, however, did not seek such dismissal, moving instead for this court to render a decision on the merits of issues no longer in controversy. Such a motion was ill-founded and obviously not ripe.

Accordingly, because counterclaim counts V, VI and VII are now moot both by their terms and by the reasoning of this court's opinion and order entered March 19, 1996, the court will grant Ameriwood's motion to dismiss for reasons other than those stated in the motion. Ameriwood's request for sanctions is denied.

## III. MOTION TO DISMISS CERTAIN AFFIRMATIVE AND SPECIAL DEFENSES (DOCKET # 172)

In its third motion, Ameriwood seeks to dismiss most of Arthur Andersen's affirmative and special defenses, asserting varying multiple reasons.

 Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense." Fed.R.Civ.P. 12(f). Although motions to strike affirmative defenses pursuant to Rule 12(f) are generally disfavored, such motions are within the sound discretion of the district court. *Federal Sav. & Loan Ins. Corp. v. Burdette,* 696 F.Supp. 1183, 1186 (E.D.Tenn.1988); *FDIC v. Butcher,* 660 F.Supp. 1274, 1277 (E.D.Tenn.1987); *FDIC v. Berry,* 659 F.Supp. 1475, 1479 (E.D.Tenn. 1987). An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstances. *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir.1953). A motion to strike under Rule 12(f) is proper where it will eliminate spurious issues before trial and streamline the litigation. *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1442 (W.D.Mich.1989).

In response to Ameriwood's motion, Andersen first asserts that the motion should be denied as untimely. I disagree. Fed. R.Civ.P. 12(f) requires motions to strike pleadings to be filed within 20 days after service, but the rule also authorizes the district court to strike pleadings "upon the court's own initiative at any time...." *Id.* This grant of judicial discretion has been interpreted to allow the district court to consider untimely motions to strike and to grant them if doing so seems proper. *See United States v. Lot 65 Pine Meadow,* 976 F.2d 1155, 1157 (8th Cir.1992); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 652–54 (2d ed.1990). Accordingly, this court has authority to consider such late motions.

### A. Defenses # # 1, 11, 14, 29, 30, 31 and 32

Andersen concedes that defenses # # 11, 14, 30, 31 and 32 are moot in light of this court's dismissal of Ameriwood's contribution claims. Andersen further concedes that defense # 1 (failure to state a claim) and defense # 29 (failure to plead fraud with specificity) previously have been rejected by this court. Accordingly, defenses # # 1, 11, 14, 29, 30, 31 and 32 will be stricken.

### B. Defenses # # 2 and 9

Defense # 2 (statute of limitations) and defense # 9 (breaches of contract, misrepresentations, and negligence caused or contributed to Ameriwood's injuries) are the subject of other pending motions. Ameriwood moves to strike the defenses in anticipation of a favorable ruling by this court on those motions. I decline to address these issues at this time. The pending motions will be addressed in turn.

### C. Defenses # # 3, 4, 5 & 6

 Ameriwood moves to strike Andersen's defense of equitable estoppel on the basis of written management representations about the truthfulness and accuracy of the financial statements. Ameriwood contends that such management representation letters may not relieve an auditor of it professional obligations or provide the basis for an estoppel defense. In support of its motions, Ameriwood cites *Seafirst Corp. v. Jenkins,* 644

F.Supp. 1152, 1157 (W.D.Wash.1986), which Ameriwood contends holds that the defense of equitable estoppel is untenable in an accountant malpractice action.

Ameriwood's reliance on *Seafirst* is misplaced. In *Seafirst*, the district court denied Andersen's motion for summary judgment on its defense of estoppel based on representation letters. The court held that, at the summary judgment stage, erroneous representation letters could not estop the corporation from bringing suit against Andersen. The *Seafirst* court did not rule that party representations to an auditor could never form the basis for estoppel.

■ As noted in this court's September 7, 1995 decision on Andersen's motion to dismiss, equitable estoppel generally is available as a defense to a legal action. *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990). The elements of a defense of equitable estoppel are the following: (1) intentional misrepresentation by a party; (2) intended to produce some action in reliance; and (3) which does reasonably induce action in reliance by another party to his detriment. *United States v. Guy*, 978 F.2d 934 (6th Cir.1992).

First, I note that I previously have held that genuine issues of material fact exist on the estoppel defense, particularly with respect to Ameriwood's intent and Andersen's reasonable reliance on Ameriwood's representations. *See* Opinion of Sept. 7, 1995, at 9–10. Second, to the extent that the motion to strike the estoppel defense overlaps with Ameriwood's motion for summary judgment on the breach of duty claims, I will discuss those claims infra. In the absence of a factual challenge, however, Ameriwood has submitted no argument that would undermine the general availability of the doctrine of equitable estoppel. Inasmuch as Ameriwood's motion is one strictly based on the facial sufficiency of the pleadings, Ameriwood has proffered no basis for granting its motion to strike. I therefore deny Ameriwood's motion to strike the estoppel defenses.

**D. *Defense # 27***

■ Ameriwood next asserts that the defense of judicial estoppel is legally insupport-able. This court held in its decision of September 7, 1995 that it had not relied upon Ameriwood's alleged representations that it did not intend to assert a contribution claim against Andersen. In addition, the court has ruled that Ameriwood's contribution claim must fail. Acknowledging those decisions, Andersen concedes that, with respect to the contribution claim, the judicial estoppel defense is moot.

Andersen contends, however, that the defense remains relevant to its argument based on *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), articulated in Andersen's motion for summary judgment of March 27, 1995. Andersen argues that Ameriwood (then Rospatch) was granted summary judgment by this court in certain related insurance litigation on the basis that Rospatch's liability was grounded exclusively in the fraud of its highest management. Andersen contends that Ameriwood's representations, because relied upon, constitute a basis for judicial estoppel in the present action.

Ameriwood makes no specific response. Instead, it broadly contends that, because the underlying securities case was settled, no position taken by Ameriwood in the securities litigation could have formed the basis for a judicial ruling or determination. Such a vague and generalized objection is an inadequate basis for striking an affirmative defense. From a review of Andersen's brief in support of its motion for summary judgment filed March 27, 1995, it appears that some basis may exist for the defense of judicial estoppel. Inasmuch as Ameriwood has failed to set forth reasons why Andersen's defense of judicial estoppel cannot succeed under any circumstances, Ameriwood's motion to strike is denied.

**E. *Defenses # # 15 and 16***

■ Ameriwood next moves to strike Andersen's defenses # # 15 and 16, which assert that Ameriwood's damages were the result of its own recklessness or intentional misconduct, in whole or in part. In defense # 15, Andersen asserts that Ameriwood's

comparative fault caused the whole or part of the damages it experienced. Alternatively, in defense #16, Andersen contends that Michigan recognizes the doctrine of in *pari delicto*, which denies a plaintiff the right to recover in a malpractice action where plaintiff itself has committed greater, intentionally culpable conduct. *See Orzel v. Scott Drug Co.*, 449 Mich. 550, 537 N.W.2d 208 (1995) (in pharmacist malpractice action, wrongful-conduct rule (encompassing in *pari delicto* rule) bars suit where plaintiff has engaged in illegal conduct that was a proximate cause of the harm at issue, and for which plaintiff's fault was at least as great as defendant's); *Pantely v. Garris, Garris & Garris, P.C.*, 180 Mich.App. 768, 447 N.W.2d 864 (1989) (applying doctrine of in *pari delicto* to bar legal malpractice claim when client engaged in perjury), *lv. denied*, 435 Mich. 870 (1990). *See also General Car & Truck Leasing Sys., Inc. v. Lane & Waterman*, 557 N.W.2d 274, 278–79 (Iowa 1996) (doctrine of in *pari delicto* applies to bar suit when plaintiff has committed illegal or fraudulent conduct of equal or greater fault than fault of defendant).

Ameriwood first argues that in *pari delicto* does not apply in Michigan, because the doctrine of pure comparative negligence controls. In support of that proposition, Ameriwood cites *Capital Mortg. Corp. v. Coopers & Lybrand*, 142 Mich.App. 531, 537, 369 N.W.2d 922, 925 (1985) (holding that, following institution of comparative negligence in Michigan, accountant malpractice claims were not completely barred by client's negligence). *Capital Mortgage*, however, did not address the doctrine of in *pari delicto*. Further, the doctrine of in *pari delicto* applies only to cases involving criminal conduct, not mere negligence as existed in *Capital Mortgage*. *See Orzel*, 449 Mich. 550, 537 N.W.2d 208. Finally, Michigan case law firmly recognizes the continuing viability of the doctrine following the advent of pure comparative negligence. *See Orzel*, 449 Mich. 550, 537 N.W.2d 208; *Pantely*, 180 Mich.App. 768, 447 N.W.2d 864.

In the instant case, Andersen alleges that Ameriwood engaged in deliberate and illegal misrepresentations in preparation of its financial statements and in its disclosures to Andersen. Such allegations are squarely within the requirements of the in *pari delicto* defense. Accordingly, Andersen's defense of in *pari delicto* is proper.

Somewhat confusingly, Ameriwood next contends that the doctrine of comparative fault is not a defense to an accountant malpractice action. Inasmuch as the *Capital Mortgage* case, the only case cited by Ameriwood on this proposition, holds that the doctrine of comparative negligence applies to accounting malpractice cases, Ameriwood's proposition is both unsupported and unsupportable under Michigan law.

Finally, Ameriwood contends that defense #16 is duplicative of defense #9, which broadly claims that damages in the action were not caused by Andersen, but by Ameriwood's own negligence, recklessness or intentional conduct. Defense #16, however, is the defense of in *pari delicto*, which specifies that Ameriwood's conduct was either reckless or intentional. The defense is not strictly cumulative of defense #9.

Accordingly, Ameriwood's motion to strike defenses ## 15 and 16 is denied.

### F. Defenses ## 17, 21, 22 and 23

Ameriwood moves to strike defenses 17, 21, 22 and 23, asserting that all four are defenses based on the theory that Ameriwood, as a corporation, is a legal fiction and therefore lacks standing to bring claims for harm caused to its shareholders. As I read the four defenses, however, only defense 17 and, implicitly, defense 23 assert the claim that Ameriwood lacks standing. Because Ameriwood has asserted no alternate basis for striking defenses 21 or 22, Ameriwood's motion to strike those defenses is denied.

With respect to defenses ## 17 and 23, Andersen concedes that the defenses are moot with respect to the contribution claim. Andersen asserts, however, that the standing defense is relevant to other claims in the case.

I disagree. As Ameriwood notes, while a corporation is a legal fiction, it is well established that corporations have the right to sue and be sued. *See New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 54 S.Ct. 788,

78 L.Ed. 1348 (1934); Mich. Comp. L. § 450.1261(b). The fiction itself "is intended to be acted upon as though it were a fact." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Here, Ameriwood seeks damages alleged to have been experienced by the corporation itself, not the then-existing shareholders. It is the corporation itself that retained Andersen and allegedly relied upon its audits. I conclude, therefore, that Andersen's standing defenses, # # 17 and 23, are legally insufficient and should be stricken.

### G. *Defense # 19*

In defense # 19, Andersen claims that it may not be held liable for Ameriwood's litigation expenses in the underlying securities action. As Andersen admits, this issue previously has been decided against it in this court's opinion of March 19, 1996. The defense therefore shall be stricken.

### H. *Defense # 24*

Andersen's affirmative defense # 24 is unclean hands. Because the court has dismissed the contribution claim, the only equitable claim in the case, defense # 24 is moot and will be stricken.

### I. *Defense # 26*

Defense # 26 asserts that, in order to recover the amounts paid to settle the securities litigation, Ameriwood had to prove "a case within a case," *i.e.,* that Ameriwood was liable in the underlying securities litigation and that the amounts it paid were reasonable. Because the court has held that the amounts paid to settle the underlying securities litigation are not recoverable, defense # 26 is moot and will be stricken.

### J. *Defense # 33*

Defense # 33 is Andersen's notice of right to add affirmative defenses. Andersen stipulates that it has stated all affirmative defenses at this time and the time for amending pleadings has passed. Accordingly, defense # 33 will be stricken.

### K. *Defenses # # 7, 8, 10, 12–14, 18, 20–23, 25 and 27*

Ameriwood last contends that certain of Andersen's defenses are duplicative or involve matters that are not truly affirmative defenses, but are instead denials of Ameriwood's case in chief. As a result, Ameriwood contends that the various defenses should be stricken "in order to streamline the pleadings for trial." In support of its motion, Ameriwood simply lists the theoretically offending defenses, thrusting the burden on the court to analyze the pleadings and evaluate whether there exists any repetition.

While certain of Andersen's defenses may overlap, there is little to be gained by the court or the litigants in dissecting each defense to determine whether any are cumulative. Striking duplicative defenses will not serve to "streamline" the litigation. *See Kelley,* 714 F.Supp. at 1442. Instead, it will serve no purpose other than to "streamline" superfluous language in the pleadings. Since the case will not be presented to the jury by way of neatly packaged pleadings, I decline to waste further judicial resources combing through sustainable defenses in order to strike repetitious language.

Similarly, I decline to closely analyze which defenses are true affirmative defenses and which amount to mere denials of plaintiff's case. As other courts previously have noted, the obligation to plead all "matter[s] constituting an avoidance or affirmative defense" creates a difficult problem for answering defendants in distinguishing between denials and affirmative defenses. *See, e.g., Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 736–7 (N.D.Ill.1982). Because the penalty for not asserting an affirmative defense is waiver, it is prudent for a defendant to state defenses as affirmative defenses if in doubt whether they could be raised by a denial. *Id.* By failing to challenge the substance of the defenses, plaintiff implicitly admits that the defenses constitute legitimate matters that will be the subject of proofs at trial. Granting a motion to strike therefore "will not promote the disposition of the case on the merits . . . ." *Id.* Plaintiff's motion to strike duplicative defenses therefore is denied.

## IV. MOTION FOR SUMMARY JUDGMENT ON "BREACH OF DUTY" COUNTERCLAIMS (DOCKET # 173)

Ameriwood's fourth motion is for summary judgment pursuant to Fed.R.Civ.P. 56(c) on what it calls Andersen's "breach of duty" counterclaims: (1) Count I, breach of contract; (2) Count II, fraud; (3) Count III, negligent misrepresentation; and (4) Count IV, negligence. Ameriwood essentially contends that Andersen, as auditor for a public corporation, may not abrogate its professional obligation to independently audit by relying upon information provided by company officers.

Under Fed.R.Civ.P. 56, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material facts are those that are defined by the substantive law and are necessary to apply that law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return a judgment for the nonmoving party. *Id.*

A party may move for summary judgment at any time, with or without supporting affidavits. Fed.R.Civ.P. 56(b); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The burden of the moving party is met by pointing the court to the absence of evidence in support of the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. Once the moving party has come forward with such a showing, the burden is on the nonmoving party to go beyond the allegations in the complaint and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court must draw all inferences in the light most favorable to the nonmoving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A. Count I: Breach of Contract

Ameriwood contends that, as a public auditor, Andersen may not allege a breach of contract action based on the failure to provide truthful and accurate information as promised in written management representation letters and as set forth in the auditor engagement letter. Ameriwood contends that the auditors's role is to verify the accuracy of management's financial statements. As a result, Ameriwood asserts that an auditor may not avoid its duty by alleging that such statements were inaccurate or misrepresented. It therefore contends that to allow an auditor to sue for breach of contract based on management representations would violate public policy.

Ameriwood cites no authority for its conclusion that an auditor may never bring a suit against a client for breach of contract based on client misrepresentations. It relies instead on broad general logic that such a claim would eviscerate the auditor's duties to the corporate client to ascertain the accuracy of management representations.

Admittedly, Andersen itself cites no authority confirming an accountant's right to bring a breach of contract action against its client. However, general contract theory is well established. When parties make a contract, presumably either side may breach and be liable to the other for resulting damages. Ameriwood has proffered and this court can find no reason why Andersen should not be entitled to bring a claim based on the same contract relied upon by Ameriwood.

Regardless, however, I conclude that Andersen's breach of contract claim must fail for a different reason. While Andersen may be entitled in theory to bring a claim for breach of contract, its remedy is limited to ordinary contract damages. Here, Andersen has alleged damages

> including, but not limited to the amounts Andersen paid in settlement of the shareholder securities litigation, the attorneys' fees and related costs expended in defending these suits, and the value of the time

and effort expended by Andersen's partners, employees and representatives in defending the shareholder securities litigation.

■ Under Michigan law, contract damages are limited to those damages "that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50, 53 (1980). In the absence of unusual circumstances, such damages ordinarily are limited "to the monetary value of the contract had the breaching party fully performed under it." *Id.*

Exceptions to this general rule exist, but none is applicable here. The contracts at issue were standard commercial arrangements. Nothing in the documents suggests that the parties contemplated any consequential damages to reputation that may be at issue here. *See Kewin*, 295 N.W.2d at 56 (holding that even bad faith breach of insurance contract cannot create right to non-contract damages including exemplary damages). Nothing in the contracts provides that attorney fees made necessary by breach will be recoverable. *See Burnside v. State Farm Fire & Cas. Co.*, 208 Mich.App. 422, 528 N.W.2d 749, 752–53 (holding that attorney fees ordinarily not recoverable in breach of contract action, even where defendant has acted in bad faith), *lv. denied*, 450 Mich. 893, 539 N.W.2d 508 (1995). Moreover, damages resulting from settlement of the securities action no longer are at issue in the case. Therefore, even had the parties contemplated recovery of such damages for breach, those damages are barred by this court's prior decisions.

Were this a case in which Andersen alleged that it had been prevented from performing on its contract because of misrepresentations or failure to provide necessary information, it might well be entitled to seek damages for the value of the contract that it had been prevented from performing. Andersen, however, does not seek damages in the amount of contract value. Presumably, Andersen was paid for performance of those contracts long ago.

Instead, Andersen seeks damages that are extraordinary and consequential. Because I conclude that the damages Andersen seeks are not recoverable in a breach of contract action, I dismiss counterclaim count I with prejudice.

### B. *Count II: Fraud*

■ Ameriwood moves to dismiss Andersen's counterclaim sounding in fraud. Specifically, Ameriwood contends that, because part of Andersen's duty as auditor was to test for management fraud, it may not bring an action against a company alleging that it was harmed by fraud.

■ In order to state a claim for fraud, a plaintiff must prove the following elements: (1) a false, material representation; (2) known to be false; (3) made with the intent that another should rely upon it; (4) actual reliance; and (5) resulting injury. *Sheldon Co. Profit Sharing Plan and Trust v. Smith*, 858 F.Supp. 663, 669 (W.D.Mich.1994); *Doe v. Johnson*, 817 F.Supp. 1382, 1387 (W.D.Mich.1993).

Ameriwood broadly contends that the fraud claim must fail because Ameriwood did not intend for Andersen to rely upon management representations. Accordingly, it claims that Andersen's reliance on such representations was unreasonable. Ameriwood further contends that Andersen's claims are untenable because they require the client to warrant the accuracy of the very information the auditor is hired to examine. Finally, in an argument made in Ameriwood's motion to dismiss (Docket # 170), Ameriwood again argues that Andersen has admitted that it was not harmed by any management misrepresentations when it states that its audit was not materially misstated.

In response, Andersen attaches among other things, the report of Douglas R. Carmichael, its auditing expert. Dr. Carmichael states that auditors are not intended to check every representation by management. Instead, an audit is designed to provide reasonable cross-checks on management accuracy. If such determinations fail to reveal discrepancies, the auditor is entitled to reasonably rely on management representa-

tions. Exhibit 1, at 7. In the instant case, Carmichael opines that Andersen conducted proper checks on the accuracy of management representations and, finding no material discrepancy, was entitled to rely upon those representations. Carmichael also states that management representations necessarily constitute some of the primary evidence to be relied upon by an auditor. Although Ameriwood's experts contend that Andersen's investigation was negligent and that the auditor's obligation was broader, the Carmichael testimony clearly raises a question of material fact for a jury on the reasonableness of reliance and the company's expectation that Andersen would rely to its detriment.

Moreover, Andersen's fraud claims allege much more than simple inaccuracy. Instead, Andersen contends both that management intended to deceive Andersen by multiple misrepresentations and that it succeeded in doing so. Andersen claims that senior management and members of the board deliberately kept relevant information from Andersen, represented that such information did not exist and interfered with audit checks that would have revealed the misrepresentations. In other words, Andersen alleges far more than that Ameriwood was required to warrant that the information provided by management was truthful. Instead, Andersen alleges that the company engaged in actual fraud to create an inaccurate picture of company financial condition. Carmichael's report substantiates these allegations and creates a genuine issue of material fact for the jury.

Finally, in Section I of this opinion, I previously rejected Ameriwood's argument that Andersen has admitted that it was not harmed by management representations. Instead, Andersen has asserted not that the audit was entirely correct, but that it contained no *material* misstatements. Should a jury determine that the misstatements were material, Andersen asserts that damages caused by such misstatements were the fault of Ameriwood.

For the foregoing reasons, I conclude that Andersen's counterclaim for fraud is sustainable. I therefore deny Ameriwood's motion for summary judgment on counterclaim count II.

### C. *Counts III & IV: Innocent Misrepresentation/Negligence*

 In counterclaim counts III and IV, Andersen claims that Ameriwood is liable for its innocent misrepresentations and other negligence in providing information to Andersen that led to misstatements in Andersen's audits. Ameriwood moves to dismiss Andersen's claim of innocent misrepresentation, asserting that Ameriwood had no duty to Andersen to avoid negligence that may cause harm to Andersen.

 The tort of innocent misrepresentation requires "proof that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich.App. 14, 436 N.W.2d 70, 81 (1989) (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609 (1988)). *See also Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149, 156 (1974) (adopting tort of negligent misrepresentation in context of abstracter's negligent performance of title search).

 Similarly, ordinary negligence actions require the existence of a legal duty owing to plaintiff from defendant. *Bonner v. Chicago Title Ins. Co.*, 194 Mich.App. 462, 487 N.W.2d 807, 810 (1992), *lv. denied*, 442 Mich. 909, 503 N.W.2d 445 (1993). Finding the existence of a duty usually "reflects policy considerations which lead the law to say that a particular injured person is entitled to protection." *Rose*, 436 N.W.2d at 81 n. 4. "The determination of whether a duty should be imposed upon a defendant is based on a balancing of the societal interest involved, the severity of the risk, the burden upon the defendant [to meet the duty], the likelihood of occurrence and the relationship between the two parties." *Swartz v. Huffmaster Alarms Sys., Inc.*, 145 Mich.App. 431, 434, 377 N.W.2d 393 (1985). *See also Doe*, 817 F.Supp. at 1386. In determining whether a duty exists, courts frequently weigh such considerations as the following:

(1) Foreseeability of harm to plaintiff; (2) degree of certainty that plaintiff suffered injury; (3) closeness of connection between defendant's conduct and injury suffered; (4) moral blame; (5) policy of preventing future harm; (6) extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for the breach; and (7) availability, costs, and prevalence of insurance for the risk involved.

*Doe,* 817 F.Supp. at 1387 (quoting *Vu v. Singer Co.,* 538 F.Supp. 26, 29 (N.D.Cal. 1981), *aff'd,* 706 F.2d 1027 (9th Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 350, 78 L.Ed.2d 315 (1983)). As a result, "courts often consider public policy implications in making a determination whether a legal duty exists in any given situation." *Doe,* 817 F.Supp. at 1387 (citing *Moore v. St. Joseph Nursing Home, Inc.,* 184 Mich.App. 766, 767–68, 459 N.W.2d 100 (1990) ("In attempting to determine whether a defendant owes an actionable duty to a plaintiff as a matter of law, it is necessary to assess competing policy considerations for and against recognizing the asserted duty.")).

In the instant case, the parties have not cited and this court has not located any case holding that a client who hires a professional for services owes a duty of due care in making his or her factual representations to that professional. It is unquestionably true that such a duty may arise out of contractual relationships of the professional to the client or foreseeable third parties. *See Clark v. Grover,* 132 Mich.App. 476, 347 N.W.2d 748 (1984). However, to find that such a duty is owed from the client to the professional would turn on its head the relationship that itself forms the basis for professional malpractice claims. *Cf. Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585, 594 (1981) (declining to recognize duty of due care running from attorney to adverse party); *Commercial Union Ins. Co. v. Medical Protective Co.,* 426 Mich. 109, 393 N.W.2d 479, 485 (1986) (declining to recognize duty of good faith and due care running from primary insurer to excess insurer).

Here, the auditor was engaged by the corporation at least in part to evaluate the reliability of financial statements. Part of the auditor's duty was to test the accuracy of client representations about its financial position. While the exact scope of the auditor's investigative duty is an issue of fact in the instant case, both sides agree that there exists at least some duty to investigate. Because discovery of negligent representations is an anticipated purpose of the audit relationship itself, it would be odd at best to allow a suit in tort based solely on the negligent representations of the client. Therefore, in the absence of bad faith intent to undermine the auditor's function, I conclude that policy considerations weigh against holding the client responsible for the very negligence underlying the auditor's role.

In contrast, plaintiff's fraud claim is based on actual knowledge of misrepresentations or reckless disregard of the truthfulness of representations. The intent to deceive increases substantially the foreseeability of the harm. In fact, where the harm is intended and sought, the occurrence of actual harm is both likely and desired by the offending party. In such circumstances, the policy balance shifts. *See Doe,* 817 F.Supp. at 1391–93 (distinguishing between duty to disclose actual knowledge of AIDS or AIDS symptoms and duty to disclose knowledge of high-risk behavior). Imposition of a duty not to affirmatively misrepresent constitutes a less intrusive burden on defendant offset against a far more likely harm to plaintiff and society.

Having reviewed Michigan case law and the policy considerations at issue, I conclude that Ameriwood owed no duty to avoid ordinary negligence in making representations to its auditors. According, I grant Ameriwood's motion to dismiss the counterclaims of innocent misrepresentation and negligence.

## V. STATUTE OF LIMITATIONS (DOCKET # 143)

Pursuant to Fed.R.Civ.P. 12(b)(6), Andersen has filed a motion to dismiss Ameriwood's claims arising out of the 1986, 1987 and 1988 audits based on the statute of limitations. Andersen contends that the action arising out of each audit accrued and the limitations period began to run at the time each audit was completed. In contrast, Am-

eriwood contends that the statute of limitations is controlled by the last date of Andersen's service to Ameriwood as auditor, or October 3, 1990.

The parties agree that a two-year statute of limitations applies to actions alleging accounting malpractice. *See Local 1064, RWDSU AFL–CIO v. Ernst & Young,* 449 Mich. 322, 535 N.W.2d 187 (1995) (applying Mich. Comp. L. § 600.5805(4) to malpractice actions against accountants). Accrual of a malpractice action is controlled by Mich. Comp. L. § 600.5838(1), which provides in relevant part:

> Except as otherwise provided in Section 5838a, a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

Essentially at issue in this case is whether Andersen's services to Ameriwood amount to separate matters out of which multiple limitations periods arise or whether it is a continuous service for which the action does not accrue until the date of termination of all accounting services. Andersen contends that its performance of auditing functions for Ameriwood resulted from independently contracted matters. As evidence of this fact, Andersen refers the court to the engagement letters upon which Ameriwood relies for its breach of contract claims. Because Andersen separately agreed to each audit in an independent engagement letter, Andersen contends that the statute of limitations separately ran from the last date it supplied accounting services for each audit.

In contrast, Ameriwood contends that the running of the statute of limitations is a fact question that may not be decided on a motion to dismiss. *See Pantely,* 180 Mich.App. at 780, 447 N.W.2d 864. Ameriwood recites a variety of facts to support its contention that the matter cannot be decided on a motion to dismiss. First, Ameriwood claims that each financial statement is dependent on earlier statements and is presented in connection with at least two years' prior statements. Second, each year's audit is planned on the basis of the work and information done in previous years. Ameriwood contends that such interdependence prevents viewing the audits as separate agreements. Third, Andersen was listed with the SEC as auditor for Rospatch until its discharge by the company on October 3, 1990. Such representation, Ameriwood asserts, was continuing, not limited to the performance of an individual audit. Fourth, Ameriwood contends that Andersen provided a broad range of services to Ameriwood throughout each year. It reviewed, helped draft and commented on Rospatch's 10–Q filings with the SEC, its amendments to registrations statements filed with the SEC, its tax returns and planning, and its internal accounting and control practices. In sum, Ameriwood contends that the services provided by Andersen were continuous and interconnected rather than discrete contracted services. As a result, Ameriwood contends that the limitations period did not begin to run until Ameriwood discharged Andersen on October 3, 1990.

Having reviewed the statute, case law and facts presented, I conclude that whether the limitations period has expired on any portion of Ameriwood's claims is a question of fact for the jury to determine.

In support of its contention that each of its audits was a separate contract for services, Andersen cites *Enzymes of America, Inc. v. Deloitte, Haskins & Sells,* 207 Mich.App. 28, 523 N.W.2d 810 (1994), *rev'd in part,* 450 Mich. 889, 539 N.W.2d 513 (1995). In *Enzymes,* the district court held that malpractice claims based on audit services provided by defendant were barred by the two-year statute of limitations governing malpractice actions, Mich. Comp. L. § 600.5805(4). The court of appeals partially reversed the district court's grant of summary judgment, holding that the general three-year statute of limitations for torts under Mich. Comp. L. § 600.5805(8) applied. The Michigan Supreme Court subsequently summarily reversed the court of appeals, based on its decision in *Local 1064,* 449 Mich. 322, 535 N.W.2d 187, holding that the two-year stat-

ute of limitations for malpractice actions under Mich. Comp. L. § 600.5805(4) applied to accountant malpractice proceedings.

Andersen argues that the reversal without directions for remand reinstated the district court's holding that actions on audits accrued at the time of the audit, before the last date of service performed by the accountants. In reversing, however, the Supreme Court did not address the accrual issue. The Supreme Court did not discuss the difference between the accrual provisions for general tort actions under Mich. Comp. L. § 600.5827 ("[T]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.") and § 600.5838 (claim "accrues at the time that person discontinues serving the plaintiff in a professional ... capacity"). The mere fact of reversal rather than remand, therefore, says little about how Michigan appellate courts may view the accrual of claims against auditors.

In contrast, in *Morgan v. Taylor,* 434 Mich. 180, 451 N.W.2d 852 (1990), the Michigan Supreme Court directly addressed the meaning of the accrual provision contained at § 600.5838. In *Morgan,* an optometrist and his office were sued for failure to diagnose glaucoma and failure to refer plaintiff for treatment with an ophthalmologist. At the time of the alleged negligence, the defendant optical service had a contract to provide routine eye examinations with plaintiff's employer. The optometrist conducted a routine eye examination of plaintiff in 1981 and diagnosed no eye problems. The same facility provided a second routine examination to plaintiff in 1983, and glaucoma was detected. Plaintiff alleged that he should have been diagnosed and referred after the first eye examination, which revealed increased eye pressure.

The Supreme Court held that, despite the fact that plaintiff was receiving no ongoing course of treatment, regular routine checkups constituted continuous treatment on which the statute of limitations did not accrue until the last date of optometric service. The Court specifically noted that the statute codified prior existing case law governing the "last treatment rule." The Court held that

cessation of the physician-patient relationship constituted the point of accrual for malpractice actions. The Court observed that the rationale, which developed out of the trust relationship between patient and doctor, applied equally where the trust was placed in the advice that no further treatment was required, as well as when that advice was to follow a particular course of treatment. Inasmuch as no intervening event had occurred to sever the relationship, the Court held that the statute did not begin to run until the last date of service, in 1983. *Morgan,* 451 N.W.2d at 858.

I acknowledge that the *Morgan* Court expressly limited its holding to the facts of that case. At the time *Morgan* was decided, the legislature had revised the accrual provision for the statute of limitations governing health professionals. *See* Mich. Comp. L. § 600.5838a. Inasmuch as the last treatment rule had been repealed by the legislature as to health professionals, the Court's decision necessarily was limited.

The legislature, however, did not revisit the accrual provision as it applied to other professionals. As a result, the *Morgan* case, while limited insofar as its reasoning applies to health professionals, continues to shed light on how the Michigan Supreme Court would interpret the malpractice accrual provision under § 600.5838 as it applies to accountants, attorneys, and other professionals. The reasoning of *Morgan* suggests that the Michigan Supreme Court reads broadly the statutory language governing the last date of service.

Moreover, in *Nugent v. Weed,* 183 Mich. App. 791, 455 N.W.2d 409, 411 (1990), the Michigan Court of Appeals, like the Supreme Court in *Morgan,* placed particular emphasis on the last date of service provided by an attorney to a client, rather than on the specific services alleged to be negligently performed. The court reasoned that defendant performed a variety of legal services for plaintiff over a substantial period of time. It held that the nature of the relationship was one of ongoing advice and service on all of plaintiff's legal needs rather than one of discreet agreements to perform particular services. As a consequence, the court held that

plaintiff's claim did not accrue until the last date of legal service performed by defendant.

Similarly, in *Maddox v. Burlingame*, 205 Mich.App. 446, 517 N.W.2d 816, 818 (1994), the court of appeals held that an attorney's last date of billed legal services was the date of accrual, despite the fact that the land transaction out of which the complaint arose had been completed some months earlier.

The reasoning of controlling Michigan cases, therefore, appears to place the greatest emphasis on that part of the accrual statute referring to the last date of service provided. By so doing, it implicitly also reads broadly that part of the statute referring to "matters out of which the claim for malpractice arose." Where the parties have a longstanding relationship with respect to multiple interrelated matters, the statute of limitations generally has been held to run from the last date of service on all matters. The courts acknowledge, however, that where the parties have entered into specific discreet agreements to provide service, the statute of limitations will run from the date service is completed on the limited service agreements. *See, e.g., Chapman v. Sullivan*, 161 Mich.App. 558, 411 N.W.2d 754 (1987).

In the absence of Michigan decisions directly on point, Andersen has cited cases from two other jurisdictions holding that the statute of limitations should be considered to run from the date of the publication of each audit. *See Lincoln Grain, Inc. v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983); *FDIC v. Deloitte & Touche*, 834 F.Supp. 1129 (E.D.Ark.1992). Although those decisions unquestionably support Andersen's proposed result, both apply statutes of limitations entirely distinct from the Michigan statute.

In fact, I observe that the passage quoted by Andersen in its brief at page 19 underscores the differences in the understanding of the Arkansas statute from that of the Michigan courts. *See* Brief (Docket # 143) at 19 (quoting *FDIC*, 834 F.Supp. at 1150). The *FDIC* court specifically compares the conduct of annual audits to the conduct of annual physical examinations at which the physician negligently fails to diagnose illness

from one year to the next. The *FDIC* court states that such annual physicals would not

> describe the sort of continuous course of treatment "for the same or related illnesses or injuries," but instead describe a "mere continuity of a general physician-patient relationship." The same must be said for the Complaint's description of the relationship between DH & S and First-South.

*Id.* In Michigan, in contrast, the *Morgan* Court expressly held that the failure to diagnose an illness in one year continued until some event terminated the physician-client relationship. Accordingly, the very analogy relied upon in *FDIC* has been rejected by the Michigan Supreme Court.

I acknowledge that the Arkansas and Nebraska interpretations of the "continuous treatment" doctrine are reasonable and, in the abstract, perhaps more persuasive than the expansive interpretation of that doctrine by Michigan courts. I also acknowledge that, in the context of long-term relationships between professionals and their clients, the Michigan interpretation of "continuous treatment" may allow stale claims to come before the court. Further, the result is incongruous where, as here, Ameriwood was on notice of its potential claims over a year before it elected to terminate Andersen's services. *See Gebhardt v. O'Rourke*, 444 Mich. 535, 544, 510 N.W.2d 900 (1994) (under tolling doctrine of discovery rule, plaintiff need only have notice of a possible cause of action to renew running of the statute of limitations).

Such observations, however, do not alter the result under Michigan law. However persuasive Andersen's interpretation of the statutory language may be, this court does not write on a clean slate. Instead, the role of this court is to apply the law as it believes Michigan courts would apply it.

In the instant case, some evidence suggests that Andersen provided ongoing continuous and interrelated services to Ameriwood. Unlike in the cited Michigan cases, however, other evidence indicates that Andersen entered into individual agreements with respect to each of the services it provided to Ameriwood. Given the analysis of the Michigan courts on the accrual of malpractice actions, I

am persuaded that whether the parties were engaged in a continuous relationship or in a series of discrete agreements to perform particular services is a question of fact for the jury. Andersen's motion to dismiss claims based on the 1986, 1987 and 1988 audits is denied.

### CONCLUSION

For the foregoing reasons, I deny Ameriwood's motion to dismiss counterclaim counts I—IV (docket # 170). I also deny Ameriwood's motion to dismiss counterclaim counts V—VII and its request for sanctions (docket # 171). Ameriwood's motion to strike affirmative and special defenses (docket # 172) is denied in part and granted in part, and affirmative defenses # # 1, 11, 14, 17, 19, 23, 24, 26, 29, 30, 31, 32 and 33 are hereby stricken. Ameriwood's motion for summary judgment on Andersen's breach of duty counterclaims (docket # 173) is granted as to counterclaim counts I, III, and IV and denied as to count II. Andersen's partial motion to dismiss based on the statute of limitations (docket # 143) is denied.

### ORDER

In accordance with the opinion filed this date,

**IT IS ORDERED** that Ameriwood's motion to dismiss counterclaim counts I—IV (docket # 170) is denied.

**IT IS FURTHER ORDERED** that Ameriwood's motion to dismiss counterclaim counts V—VII and its request for sanctions (docket # 171) are denied.

**IT IS FURTHER ORDERED** that Ameriwood's motion to strike affirmative and special defenses (docket # 172) is denied in part and granted in part. Affirmative defenses # # 1, 11, 14, 17, 19, 23, 24, 26, 29, 30, 31, 32 and 33 are hereby stricken.

**IT IS FURTHER ORDERED** that Ameriwood's motion for summary judgment on Andersen's breach of duty counterclaims (docket # 173) is granted as to counterclaim counts I, III, and IV and denied as to count II.

**IT IS FURTHER ORDERED** that Andersen's motion for partial dismissal based

on the statute of limitations (docket # 143) is denied.